**[This opinion has been published in *Ohio Official Reports* at 70 Ohio St.3d 25.]**

THE STATE OF OHIO, APPELLEE, *v.* HILL, APPELLANT.

**[Cite as *State v. Hill*, 1994-Ohio-12.]**

*Criminal law—Drug offenses—Forfeiture of property relating to felony drug abuse offense—R.C. 2925.42—Prior to entering order of forfeiture, trial court must make an independent determination whether forfeiture of that property is an "excessive fine" prohibited by the Excessive Fine Clauses of the Ohio and United States Constitutions.*

Forfeiture of property, pursuant to R.C. 2925.42, is a form of punishment for a specified offense and, therefore, is a "fine" for purposes of Section 9, Article I of the Ohio Constitution and the Eighth Amendment to the United States Constitution. Accordingly, prior to entering an order of forfeiture, the trial court must make an independent determination whether forfeiture of that property is an "excessive fine" prohibited by the Excessive Fine Clauses of the Ohio and United States Constitutions.

(No. 93-715—Submitted April 20, 1994—Decided August 3, 1994.)

APPEAL from the Court of Appeals for Lorain County, No. 92CA005332.

———————————

{¶ 1} Appellant, Frederick A. Hill, is the owner of various rental properties. One of his properties is an apartment complex located at 47 Morgan Street, Oberlin, Ohio. The complex consists of two buildings. There is a building which contains seven apartment units and a separate garage building containing an apartment where appellant resides. According to appellant, the complex is valued at approximately $110,000.

{¶ 2} Benjamin Newbauer, while a tenant at the 47 Morgan Street apartment complex, asked appellant if he could use an area in the basement of the complex, which apparently was adjacent to Newbauer's apartment, to grow

marijuana. Newbauer informed appellant that he intended to grow the marijuana solely for his personal use. Appellant gave Newbauer permission to grow the plants.

{¶ 3} On February 27, 1991, a police officer for the village of Grafton executed a search warrant at the 47 Morgan Street apartment complex. It appears that the search uncovered eighty-five marijuana plants. The total weight of marijuana seized was 6,172 grams. Subsequently, Newbauer pleaded guilty to trafficking in marijuana. He was placed on probation and apparently ordered to pay a mandatory fine of $2,000.

{¶ 4} Appellant also was indicted for trafficking in marijuana in violation of R.C. 2925.03(A)(3). The grand jury further concluded that the apartment complex was owned by appellant, and that it was used in the commission of the offense and, as such, may be subject to forfeiture pursuant to R.C. 2925.42. The case proceeded to a jury trial.

{¶ 5} At trial, Newbauer was a witness for appellee, the state of Ohio. Newbauer testified that initially he intended to grow marijuana solely for his personal use. However, when more seeds germinated than anticipated, Newbauer changed his mind. Newbauer then decided to sell some of the marijuana, give a portion to friends and retain some for his personal use. The state essentially attempted to demonstrate that appellant gave Newbauer permission to grow the marijuana plants, that appellant knew the quantity of plants being grown, and that he aided and abetted Newbauer in the illegal operation.

{¶ 6} With regard to proving that appellant assisted Newbauer, the state emphasized that appellant allowed his credit card to be used to order some equipment needed to grow the marijuana. Newbauer testified that appellant actually ordered the equipment and that he (Newbauer) agreed to reimburse appellant. Newbauer also testified he owed appellant $700. The record further indicates appellant paid certain utility bills for Newbauer's apartment, and that a

note was found which suggested Newbauer may have given appellant directions on how to care for the plants in Newbauer's absence.

{¶ 7} Appellant admitted that he gave Newbauer permission to grow marijuana for Newbauer's personal use. It is undisputed appellant knew the plants were being grown by Newbauer and that appellant had even seen the plants on various occasions. The mainstay of appellant's defense, however, was that he did not know Newbauer had changed his mind and intended to sell some of the marijuana or give some of it away. Further, when questioned about the use of his credit card in acquiring certain equipment, appellant maintained he owed Newbauer money for work Newbauer had performed as a handyman in the apartment complex. Newbauer testified that he had worked for appellant. Appellant admitted that he allowed Newbauer to use his credit card, but denied he (appellant) actually ordered the equipment. In addition, appellant denied that he had ever cared for the plants or had ever received watering instructions from Newbauer.

{¶ 8} The jury found appellant not guilty of trafficking in marijuana, but guilty of complicity to the offense charged in violation of R.C. 2923.03 and 2925.03(A)(3), a fourth-degree felony. The jury further found that the apartment complex owned by appellant was used to commit or to facilitate the commission of the offense. Subsequently, appellant was sentenced to one year in prison, fined $1,000 and, pursuant to R.C. 2925.42, ordered to forfeit the 47 Morgan Street apartment complex. Thereafter, pursuant to Crim.R. 33, appellant filed a motion for a new trial. The trial court denied his request.

{¶ 9} On appeal, the Court of Appeals for Lorain County affirmed appellant's conviction and sentence. The court of appeals also affirmed the forfeiture of appellant's apartment complex.

{¶ 10} The cause is now before this court pursuant to the allowance of a motion for leave to appeal.

_____

*Gregory A. White*, Lorain County Prosecuting Attorney, and *Jonathan E. Rosenbaum*, Assistant Prosecuting Attorney, for appellee.

*Gold, Rotatori & Schwartz Co., L.P.A.*, and *Niki Z. Schwartz*; and *Robert A. Nagy*, for appellant.

---

**DOUGLAS, J.**

{¶ 11} Appellant raises various propositions of law for our determination. Appellant essentially challenges the jury's finding of guilt, the sentence imposed by the trial court, and the forfeiture of his apartment complex.

I

Finding of Guilt

{¶ 12} As a threshold matter, appellant assails his conviction of complicity to trafficking in marijuana. R.C. 2923.03(A)(2) provides that "[n]o person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense * * *." R.C. 2925.03(A)(3) sets forth that "[n]o person shall knowingly * * * [c]ultivate, manufacture, or otherwise engage in any part of the production of a controlled substance * * *." R.C. 2925.03(F), however, provides a person, charged for possession of a bulk amount of a controlled substance or for cultivating marijuana, with an affirmative defense if the person can demonstrate that the possession or cultivation was solely for his or her personal use.

{¶ 13} Appellant contends that the evidence demonstrated he was only aware that Newbauer intended to grow the marijuana for Newbauer's personal use. Appellant further claims he could not have known that Newbauer intended to sell the drug because of his (appellant's) ignorance of the drug and, based on his naivety, would not have known how many marijuana plants would be appropriate for personal use. Therefore, appellant claims there was no evidence from which a

reasonable jury could have concluded that he shared Newbauer's intent to traffic in marijuana.

{¶ 14} The state disagrees with appellant's contentions and raises the issue that appellant, as an aider and abettor, is not entitled to the personal-use defense set forth in R.C. 2925.03(F). The state contends that such a defense is "personal" and, consequently, Newbauer, as the principal offender, would be the only person entitled to claim this defense.

{¶ 15} It is obvious that appellant did not assert a "personal use" defense regarding his possible consumption of the drug. Rather, appellant attempted to demonstrate that he acquiesced in Newbauer's original intent allowing Newbauer to grow marijuana for *Newbauer's* personal use. The state's argument, if followed to its extreme, would allow a defendant who has been charged with aiding and abetting to be prosecuted for assisting a principal in an act which the principal is privileged to do. This would be comparable to allowing a defendant to be convicted for aiding and abetting without proof that a principal offense was committed. We have held that although the state need not establish the principal's identity, it must, at the very least, prove that a principal committed the offense. *State v. Perryman* (1976), 49 Ohio St.2d 14, 3 O.O.3d 8, 358 N.E.2d 1040, paragraph four of the syllabus.

{¶ 16} We believe that appellant was entitled to raise the defense provided for in R.C. 2925.03(F), particularly where, in a case such as this, a complicitor can be liable to prosecution and punishment as a principal offender. See R.C. 2923.03(F).[1] The state's theory was that appellant aided and abetted Newbauer in cultivating the marijuana. Thus, it is only reasonable to conclude that a defendant who has been charged with complicity to trafficking in marijuana may, under

---

1. R.C. 2923.03(F) provides that "[w]hoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender. A charge of complicity may be stated in terms of this section, or in terms of the principal offense."

proper circumstances, be entitled to the personal-use defense set forth in R.C. 2925.03(F).

{¶ 17} In the case at bar, the jury was instructed by the trial court that in order to find appellant guilty of complicity to trafficking in marijuana, it must determine that appellant knowingly aided or abetted Newbauer in cultivating or manufacturing marijuana, or that appellant engaged in any part of the production of the drug. Further, the jury was charged that "* * * if you find that this [d]efendant had a good faith belief that Benjamin Newbauer was merely growing marijuana at 47 Morgan Street solely for Benjamin Newbauer's personal use, then the [s]tate has not proven the element of knowingly."

{¶ 18} The jury, having been properly instructed on the law, returned a verdict of guilty and apparently rejected appellant's defense. Resolution of these issues was clearly within the province of the jury which heard all the evidence and observed the demeanor and candor of the witnesses. The court of appeals stated, and we agree, that "[t]he record in this case shows that the jury could infer from the sheer volume of marijuana and the number of plants confiscated that appellant must have known that Newbauer intended to sell the drug." There was sufficient evidence to support the jury's finding of guilt and, accordingly, we are unwilling to disturb the jury's determination on these matters.

## II

### The Sentence

{¶ 19} Appellant also challenges the trial court's imposition of a one-year prison sentence. Appellant claims that by not pleading guilty to the offense he was punished for exercising his constitutional right to a jury trial. Appellant's underlying criticism is that the trial court abused its discretion in giving him a harsher sentence than that given to Newbauer.

{¶ 20} There is no question that on its face the sentence received by appellant, when compared to Newbauer's punishment, is disproportionate. Given

the fact that Newbauer received probation, appellant's one-year prison sentence does appear to be harsh. However, as a general rule, an appellate court will not review a trial court's exercise of discretion in sentencing when the sentence is authorized by statute and is within the statutory limits. See, generally, *Toledo v. Reasonover* (1965), 5 Ohio St.2d 22, 24, 34 O.O.2d 13, 14, 213 N.E.2d 179, 180-181. See, also, *State v. Cassidy* (1984), 21 Ohio App.3d 100, 102, 21 OBR 107, 108-109, 487 N.E.2d 322, 323; *State v. Burge* (1992), 82 Ohio App.3d 244, 249, 611 N.E.2d 866, 869; and *State v. Grigsby* (1992), 80 Ohio App.3d 291, 302, 609 N.E.2d 183, 190.

{¶ 21} In the case *sub judice*, the trial court followed the sentencing scheme set forth by the General Assembly and apparently elected the median imprisonment permitted for a fourth-degree felony. See R.C. 2929.11(D)(2). The sentence was within the statutory limits and, for this reason, we will not interfere with the trial court's exercise of discretion. We do respectfully suggest, however, that upon remand, as provided for *infra*, the trial court take into consideration our stated feelings with regard to the sentence given appellant and consider all the options available to the court in sentencing, including, but not limited to, shock probation. In making such observation, we are mindful that any suspension of sentence and terms upon which a suspension is granted are clearly within the discretion of the trial court.

## III

## Forfeiture

{¶ 22} As a final matter, appellant contests the forfeiture of his apartment complex. Appellant argues that forfeiture of his *entire* property does not fall within the scope of R.C.2925.42(A)(1)(b) and does not withstand scrutiny under Section 9, Article I of the Ohio Constitution or the Eighth Amendment to the United States Constitution.

*A*

R.C. 2925.42(A)(1)(b)

**{¶ 23}** R.C. 2925.42 permits forfeiture of certain property in connection with specific felony drug abuse offenses. The portion of the statute relevant herein provides that:

"(A)(1) In accordance with division (B) of this section, a person who is convicted of or pleads guilty to a felony drug abuse offense, * * * loses any right to the possession of property and forfeits to the state any right, title, and interest he may have *in that property* if * * *:

"* * *

"(b) The *property* was *used* or intended to be used *in any manner* to commit, or to *facilitate* the commission of, the felony drug abuse offense or act.

"(2) All *right*, *title*, and *interest* of a person in *property* described in division (A)(1) of this section vests in the state upon the person's commission of the felony drug abuse offense of which he is convicted or to which he pleads guilty and that is the basis of the forfeiture * * *." (Emphasis added.)

**{¶ 24}** Appellant contends that forfeiture of his entire apartment complex was beyond the intended scope of R.C. 2925.42(A)(1)(b), in that only a portion of the complex was actually involved in the illegal drug activity. In support of his position, appellant argues that R.C. 2925.42(A)(1)(b) is patterned after Section 853(a)(2), Title 21, U.S. Code,[2] the federal criminal forfeiture section of the Comprehensive Drug Abuse Prevention and Control Act. Therefore, argues appellant, because Section 853(a)(2) contains the language "or part," which language has been interpreted to allow forfeiture of the entire property, and because such language is absent from Ohio's criminal forfeiture statute, the General

2. Section 853(a)(2), Title 21, U.S. Code provides in part that "[a]ny person convicted of a violation of this subchapter * * * punishable by imprisonment for more than one year shall forfeit to the United States * * * any of the person's property used, or intended to be used, *in any manner or part*, to commit, or to facilitate the commission of, such violation * * *." (Emphasis added.)

Assembly did not intend that an entire parcel be forfeited when only a portion thereof has been used to commit the offense. Appellant urges that "[t]he omission of this language therefore evidences a deliberate deletion, rather than inartful phraseology which simply fails to express the legislature's intent."

{¶ 25} While there are similarities and obvious differences between R.C. 2925.42 and the federal scheme, we need not resort to federal law, or a federal court's interpretation of a federal statute for that matter, to construe our own criminal forfeiture statute. At issue here is state law and, absent a clear pronouncement from Congress preempting the field, it will be given independent construction. See, generally, *Arnold v. Cleveland* (1993), 67 Ohio St.3d 35, 616 N.E.2d 163.

{¶ 26} We begin our analysis of R.C. 2925.42(A)(1)(b) with the well-settled proposition that a criminal statute is to be strictly construed against the state. *State v. Hooper* (1979), 57 Ohio St.2d 87, 89, 11 O.O.3d 250, 251, 386 N.E.2d 1348, 1350. This is also true with regard to a criminal statute that involves a penalty. R.C. 2901.04(A). Further, the law does not favor forfeiture. *State v. Lilliock* (1982), 70 Ohio St.2d 23, 25-26, 24 O.O.3d 64, 65-66, 434 N.E.2d 723, 725. See, also, *Ohio Dept. of Liquor Control v. Sons of Italy Lodge 0917* (1992), 65 Ohio St.3d 532, 534, 605 N.E.2d 368, 369 ("The law requires that we favor individual property rights when interpreting forfeiture statutes."). However, we are also mindful of the rule that legislative intent is to be drawn from the explicit terms of the statute. Moreover, in assessing the application of a forfeiture statute, we must keep in mind the purpose for which the legislation was enacted. *State v. Baumholtz* (1990), 50 Ohio St.3d 198, 202, 553 N.E.2d 635, 638.

{¶ 27} The General Assembly, in enacting R.C. 2925.42(A)(1)(b), established specific requirements. First, it is "property" which is subject to forfeiture. "Property," as defined in R.C. 2925.42(A)(1)(b), is all-inclusive, encompassing both real and personal property. See R.C. 2901.01(J)(1). Second,

in order for "the property" to be subject to forfeiture, that particular property must have been "used" or intended to be used in any manner to commit or "facilitate" the illegal activity. Black's Law Dictionary (6 Ed.1990) 1541, defines "use" as "* * * to avail oneself of; to utilize; to carry out a purpose or action by means of; to put into action or service, especially to obtain an end." "Facilitate" is defined as "[t]o free from difficulty or impediment." *Id.* at 591. Further, "facilitation" is defined as "* * * the act of making it easier for another to commit crime * * *." *Id.*

{¶ 28} By its very terms, the statutory provision at issue incorporates a proportionality requirement. The state had the initial burden of proving by a preponderance of the evidence that the apartment complex was *used* to *facilitate* the illegal activity. Notwithstanding, appellant claims that the portion of the complex where the marijuana was actually grown was the area limited to forfeiture or, alternatively, a monetary value should have been placed on that area because it "constitutes the statutory outer limits of permissible forfeiture in this case." Given the situation here, we disagree.

{¶ 29} The language of R.C.2925.42(A)(1)(b) is clear. The statute establishes that in certain instances a person who is convicted of a specific felony drug abuse offense forfeits all right, title and interest he or she may have in property *if that property* was an integral part of the specified illegal activity. Most notably, the statute requires that *the property* be forfeited—not a monetary assigned value to that property. Obviously, R.C. 2925.42 was enacted to combat various felony drug offenses or acts and, as a means to achieve this goal, the General Assembly intended to allow the state to take possession of those instrumentalities that were connected with the illicit conduct. R.C.2925.42 was enacted with various purposes in mind. Not only does forfeiture function as a penalty to those who choose to commit certain crimes, but it dispossesses a defendant of the means to commit further offenses. Further, forfeiture may also help the state defray expenses associated with the investigation and prosecution of those offenses.

{¶ 30} Following the jury's determination that appellant was guilty of complicity to trafficking in marijuana, the trial court instructed the jury with regard to the additional issue of forfeiture. After thoroughly reviewing the record, we are convinced that the jury's response to the special interrogatory, finding that the apartment complex was used to commit or to facilitate the offense of complicity to trafficking in marijuana, was proper. The jury was presented with sufficient evidence and, if believed, supported a finding that the complex provided a means to foster, shelter and conceal the illegal operation. As such, we will not disturb the findings of the jury.

*B*

Constitutionality of the Forfeiture

{¶ 31} Appellant also maintains that the forfeiture of his entire interest in the apartment complex violated the Excessive Fines Clauses of Section 9, Article I of the Ohio Constitution and the Eighth Amendment to the United States Constitution. Appellant's contention is predicated on two recent decisions from the United States Supreme Court—*Austin v. United States* (1993), 509 U.S. __, 113 S.Ct. 2801, 125 L.Ed.2d 488; and Alexander v. United States (1993), 509 U.S. __, 113 S.Ct. 2766, 125 L.Ed.2d 441.

{¶ 32} In *Austin*, the federal government, pursuant to Sections 881(a)(4) and (7), Title 21, U.S. Code, sought forfeiture of a defendant's mobile home and auto body shop following a guilty plea by the defendant in a South Dakota state court for possessing cocaine with the intent to distribute. The defendant argued that forfeiture of his properties would violate the Eighth Amendment.

{¶ 33} As a threshold matter, the court determined that the Excessive Fines Clause is applicable to criminal and civil cases and, further, ascertained that its purpose is to prevent government from abusing its power to punish. *Id*. at __, 113 S.Ct. at 2805, 125 L.Ed.2d at 497. The court, after exploring historical aspects of forfeiture and the legislative history of the federal provisions at issue, concluded

that the in rem forfeiture under these provisions serves not simply remedial goals but also those of punishment and deterrence and, therefore, is subject to the limitation of the Excessive Fines Clause. *Id*. at __, 113 S.Ct. at 2812, 125 L.Ed.2d at 505-506.

{¶ 34} In *Alexander*, the defendant was convicted in a federal district court of obscenity offenses and Racketeer Influenced and Corrupt Organizations Act ("RICO") violations. In addition to imposing a six-year prison term and a $100,000 fine, the court ordered the defendant to forfeit his wholesale and retail businesses and approximately $9,000,000 acquired through racketeering activity. The court of appeals affirmed. The appellate court did not consider whether the forfeiture provision resulted in an "excessive" penalty within the meaning of the Eighth Amendment.

{¶ 35} On appeal, the United States Supreme Court held, *inter alia*, that "[t]he *in personam* criminal forfeiture at issue here is clearly a form of monetary punishment no different, for Eighth Amendment purposes, from a traditional 'fine.' Accord *Austin*, *supra*. Accordingly, the forfeiture in this case should be analyzed under the Excessive Fines Clause." (Footnote omitted.) *Alexander*, *supra*, at __, 113 S.Ct. at 2775-2776, 125 L.Ed.2d at 455.

{¶ 36} The tone of the court in *Austin* and *Alexander*, and other recent cases from the United States Supreme Court,[3] seems to be one of caution, encouraging fairness in the enforcement of forfeiture laws. The court, however, has given little guidance as to what factors constitute an "excessive fine" within the meaning of the Eighth Amendment. In *Austin* and *Alexander* the issue was remanded. Specifically, the *Austin* court declined an invitation to establish a multifactor test

---

3. See, also, *United States v. James Daniel Good Real Property* (1993), 510 U.S. __, 114 S.Ct. 492, 126 L.Ed.2d 490; *Republic Natl. Bank of Miami v. United States* (1992), 506 U.S. __, 113 S.Ct. 554, 121 L.Ed.2d 474; and *United States v. Parcel of Land, Buildings, Appurtenances & Improvements* (1993), 507 U.S. __, 113 S.Ct. 1126, 122 L.Ed.2d 469.

for determining whether a forfeiture is "excessive," finding that "[p]rudence dictates that we allow the lower courts to consider that question in the first instance." *Id*. at __, 113 S.Ct. at 2812, 125 L.Ed.2d at 506.

{¶ 37} Some courts have recognized certain factors that may be relevant in determining whether forfeiture is grossly disproportionate to the seriousness of the offense, thereby violating the Eighth Amendment. In *United States v. Sarbello* (C.A.3, 1993), 985 F.2d 716, 724, the court stated that a lower court's proportionality analysis "must necessarily accommodate the facts of the case and weigh the seriousness of the offense, including the moral gravity of the crime measured in terms of the magnitude and nature of its harmful reach, against the severity of the criminal sanction. Other helpful inquires might include an assessment of the personal benefit reaped by the defendant, the defendant's motive and culpability, and, of course, the extent that the defendant's interest and the enterprise itself are tainted by criminal conduct." The court also emphasized that "[t]he language of the eighth amendment demands that a constitutionally cognizable disproportionality reach such a level of excessiveness that in justice the punishment is more criminal than the crime." *Id*.

{¶ 38} Similarly, in *United States v. Busher* (C.A.9, 1987), 817 F.2d 1409, 1415, the court wrestled with the issue of forfeiture of a defendant's business and observed that the Eighth Amendment "* * * embodies fluid concepts that vary in application with the circumstances of each case * * *." *Id*. The court commented that the "penalty," when compared with the offense, should include not only the actual forfeiture but also any sentence, fine or probation imposed on the defendant. *Id*. at 1415, fn. 10. The court further stated that:

"In considering the harm caused by defendant's conduct, it is certainly appropriate to take into account its magnitude: the dollar volume of the loss caused, whether physical harm to persons was inflicted, threatened or risked, or whether the crime has severe collateral consequences, *e.g.*, drug addiction. * * * In

addition, the court may consider the benefit reaped by the convicted defendant. However, the forfeiture is not rendered unconstitutional because it exceeds the harm to the victims or the benefit to the defendant. After all, RICO's forfeiture provisions are intended to be punitive. The eighth amendment prohibits only those forfeitures that, in light of all the relevant circumstances, are *grossly disproportionate* to the offense committed." (Emphasis *sic*.) *Id.* at 1415.

{¶ 39} The court in *Busher* also added the caveat that a court should be reluctant to order forfeiture of a defendant's entire interest in an enterprise where the defendant has committed minor violations. "Conversely, if illegal activity accounts for all or almost all of an enterprise's activity, or an interest in an enterprise was acquired entirely or almost entirely with ill-gotten funds, it would not normally violate the eighth amendment to order forfeiture of all of defendant's interest in that enterprise." *Id*. at 1415-1416.

{¶ 40} With the foregoing discussion in mind, we hold that forfeiture of property, pursuant to R.C. 2925.42, is a form of punishment for a specified offense and, therefore, is a "fine" for purposes of Section 9, Article I of the Ohio Constitution and the Eighth Amendment to the United States Constitution. Accordingly, prior to entering an order of forfeiture, the trial court must make an independent determination whether forfeiture of that property is an "excessive fine" prohibited by the Excessive Fine Clauses of the Ohio and United States Constitutions.

{¶ 41} In this case, the lower courts did not have the benefit of the United States Supreme Court's decisions in *Austin* and *Alexander*, *supra*, or assistance of our discussion on the issue. Hence, the lower courts did not consider whether the forfeiture of appellant's property, under the circumstances, was "excessive" within the contemplation of Section 9, Article I and the Eighth Amendment. This being the case, we reverse and remand in part this cause to allow the trial court to

specifically address this issue (and possibly appellant's sentence) in light of the principles delineated in this opinion.[4]

*Judgment affirmed in part,*

*reversed in part*

*and cause remanded.*

MOYER, C.J., F.E. SWEENEY and PFEIFER, JJ., concur.

RESNICK, J., concurs separately.

A.W. SWEENEY and WRIGHT, JJ., concur in part and dissent in part.

_____

**ALICE ROBIE RESNICK, J., concurring.**

{¶ 42} I concur in the majority opinion, but write separately to highlight certain concerns with today's holding.

{¶ 43} Drug abuse and trafficking are at the root of many other crimes in this state and nation. That is the very reason that forfeiture of property used or intended to be used to facilitate illegal activity was devised and is employed. While I concur that forfeiture of property amounts to a penalty, I hope that today's holding will not emasculate our forfeiture statute. I am afraid that it will result in disparate and unequal treatment of persons charged with crime. Under the present system any property used or intended to be used in furtherance of criminal activity is forfeited. Under such a procedure, all persons are treated equally, all property used or intended to be used to facilitate a crime is forfeited and, lastly, everyone engaging in criminal activity is forewarned that if one acts in this illegal manner, one's property will be seized. Resultantly, forfeiture acts as a deterrent to certain criminal behavior. Given today's ruling, forfeiture will occur on a case-by-case

_____

4. In doing so, we are mindful of the expected criticism that we have not established specific guidelines or a "bright line" test to assist trial courts in the task of applying the forfeiture law. There are two reasons for this apparent omission. First, we believe that the law should be developed in its normal and appropriate course—by trial courts and courts of appeals. Second, we readily admit that we are no more clairvoyant than our sisters and brothers in those courts. *State v. Hill.*

basis, dependent upon the individual bias, sympathies and philosophy of each judge.

**{¶ 44}** Forfeiture of property is good policy. It deters criminal activity and it assists in paying for costs involved in law enforcement. While I reluctantly concur in today's majority opinion, I do hope that it does not weaken or erode a very wise and useful tool of law enforcement.

———————————

**A. WILLIAM SWEENEY, J., concurring in part and dissenting in part.**

**{¶ 45}** While I agree with the law enunciated by the majority in the syllabus, I believe that the nature of the instant forfeiture was so excessive as to constitute a clear violation of Section 9, Article I of the Ohio Constitution and the Eighth Amendment to the United States Constitution. Therefore, I respectfully dissent in part to the majority's disposition of this case.

**{¶ 46}** The emerging trend established by the United States Supreme Court in both *Alexander v. United States* (1993), 509 U.S. __, 113 S.Ct. 2766, 125 L.Ed.2d 441, and *Austin v. United States* (1993), 509 U.S. __, 113 S.Ct. 2801, 125 L.Ed.2d 488, is to emphasize the scrutiny that courts must employ when confronting forfeitures of property authorized by statute as punishment for certain criminal offenses.

**{¶ 47}** I appreciate the majority's desire to allow the trial court to specifically address the excessive-fine issue as an orderly disposition of this case. However, I believe that the instant forfeiture was so excessive as to constitute a clear violation of the "excessive fines" clauses of both the state and federal Constitutions. Accordingly, in the interests of judicial economy, I would reverse the forfeiture of appellant's apartment complex as a patent constitutional violation of the "excessive fines" clauses under the facts and circumstances of this case.

WRIGHT, J., concurs in the foregoing opinion.

———————————