RICE, Appellee,

v.

BOARD OF COMMISSIONERS OF LOGAN COUNTY et al., Appellants.

[Cite as *Rice v. Logan Cty. Bd. of Commrs.* (1996), 114 Ohio App.3d 198.]

Court of Appeals of Ohio,
Third District, Logan County.

No. 8–96–06.

Decided Oct. 9, 1996.

*Gerald A. Heaton,* Logan County Prosecuting Attorney, and *Mark A. Losey,* Assistant Prosecuting Attorney, for appellants.

*Rizor, Minnard & Golden Co., L.P.A.,* and *Craig M. Linnon,* for appellee.

---

EVANS, Judge.

This appeal is brought by the Board of Commissioners of Logan County, Mike Henry, Logan County Sheriff, and Gerald Heaton, Prosecuting Attorney ("appellants"), from a judgment of the Court of Common Pleas of Logan County enjoining appellants from conveying certain property, quieting title of the property in Linda Beck Rice ("appellee"), and reinstating an indictment charging appellee with drug trafficking and including a forfeiture specification.

The record in this case reveals that appellee was indicted on criminal charges on June 20, 1995 which alleged that appellee cultivated marijuana in violation of R.C. 2925.03(A)(3). The indictment also contained a forfeiture specification in

accordance with R.C. 2925.42 relating to appellee's real property. Appellee was subsequently arraigned without counsel. On August 14, 1995, the state moved *ex parte* to dismiss the charges (without prejudice) against appellee as a result of her cooperation with the state. The following day, appellee executed a warranty deed transferring her real property to the Logan County Board of Commissioners. At the time of the conveyance, Jeff Cooper, a drug investigator at the Logan County Sheriff's Department, signed a quid pro quo statement assuring appellee that the criminal charges against her had been dismissed. Cooper further promised to assist appellee in the restoration of her driving privileges.

On February 2, 1996, appellee filed a complaint for a temporary restraining order and a permanent injunction to stop the sale of her transferred property. In the complaint, appellee alleged that the conveyance was fraudulently and illegally procured. Appellants filed an answer on February 15, 1996. A hearing was held on April 8, 1996. On April 30, 1996 the trial court permanently restrained and enjoined appellants from conveying or encumbering the real estate at issue until the state complied with statutory forfeiture procedures. Title of the property was quieted in appellee. Appellants now appeal this judgment, asserting two assignments of error.

## Assignment of Error No. 1

"The trial court erred in setting aside the conveyance of the plaintiff to the Logan County Board of Commissioners on procedural grounds."

## Assignment of Error No. 2

"The trial court erred in that its finding that appellee's conveyance was part of criminal forfeiture action was against the manifest weight of the evidence."

Because appellants' two assignments of error are related, we will consider them together.

The events leading up to the trial court's decision on April 30, 1996 deserve additional explanation in order to give context to the present controversy. In May 1995, after a police investigation of appellee's husband, Wes Rice, law enforcement executed a search warrant on the Rice premises. Police found evidence of marijuana cultivation in a barn on the property and consequently charged Wes Rice with drug trafficking and attached a forfeiture specification. Appellee claimed that she had no knowledge of her husband's cultivating activity. However, she was also charged with drug trafficking approximately one month after her husband's arrest. We note that the property involved in this case was owned outright by appellee prior to her marriage to Wes Rice. Wes Rice has signed away his inchoate dower interest in the property to the board of commissioners.

A confidential police informant named Phil Dyer participated in the undercover investigation which eventually led to the arrest of Wes Rice and appellee. Prosecutor Gerald Heaton testified at the April 8 hearing that according to Dyer's agreement with police, in addition to a salary, he would receive a percentage of any forfeiture revenue resulting from his work as an informant. Even after being charged, appellee was apparently unaware of Dyer's status as an informant. According to testimony given by appellee at the April hearing, appellee believed Dyer to be a sympathetic friend, and even moved in with Dyer and his wife when she learned that her house was under a claim by the state for forfeiture. Appellee also testified that Dyer told her that if she did not forfeit her property she risked losing custody of her son.

Apparently, Dyer took an active role in arranging the meeting, which took place at his home, wherein appellee signed over the title to her property only one day after her criminal charges were dropped and before any civil forfeiture proceedings were instituted. Appellee stated that she transferred the title in exchange for the dismissal of the criminal charges and reinstatement of her driving privileges. This statement was opposed by Heaton, who prepared the deed transfer and who stated that he dismissed the criminal charges against appellee for independent reasons, and not as a quid pro quo for forfeiture. Heaton testified that he did not speak with appellee about setting up the forfeiture but that it was "indicated" that appellee wished to forfeit her property. All contact between Heaton and appellee was via third parties according to Heaton. Appellee likewise denied any direct contact with the prosecutor's office, but stated that all the forfeiture arrangements were made by Dyer. At no time prior to the forfeiture did appellee speak with an attorney.

Appellants contend that the forfeiture in this case was not obtained pursuant to any forfeiture statute, *per se*. Rather, appellants claim that appellee *voluntarily* transferred her property to the state. Appellee's motive, as surmised by appellants, was to forgo looming civil forfeiture proceedings. Appellants argue that the option to proceed under the civil forfeiture statute, R.C. 2925.43, was still available to the state and that appellee voluntarily conveyed her property to the Logan County Board of Commissioners in order to avoid further litigation she could not afford.

Even assuming, *arguendo*, that the appellants' actions were lawful, the actions taken by appellants in obtaining the forfeiture of the premises outside any legal proceeding gives rise to the appearance of impropriety, a perception which should be avoided by lawyers and public officeholders alike. See, generally, EC 7–36; EC 9–6.

 We find that the timing alone of this "voluntary" forfeiture is suspect. Appellee's criminal charges were dismissed without prejudice in an *ex parte*

proceeding one day prior to the deed transfer. Appellee, without knowledge of the dismissal and without assistance of counsel, conveyed the property in exchange for a written statement from Jeff Cooper advising appellee that the charges against her had been dismissed. The legitimacy of the entire transfer is further undermined by the extensive involvement of Phil Dyer, a financially interested party with state affiliation who arranged the meeting to complete the forfeiture. We find that the facts brought out in the April 1996 hearing, together with the timing of the transfer of title, support the notion that what occurred on August 15, 1995 was a de facto plea agreement entered into without court authority and without the procedural safeguards normally available to a defendant in a criminal forfeiture action.

The Supreme Court of Ohio has recognized the importance of following recognized procedures in forfeiture actions in order to ensure the integrity of the proceedings. In *Edson v. Crangle* (1900), 62 Ohio St. 49, 66, 56 N.E. 647, 648, the Supreme Court stated:

"Proper legal proceedings are always necessary to adjudge a forfeiture or confiscation, and to permit officers or private persons to seize, sell or appropriate private property without legal proceedings, under a claim of confiscation, would be inconsistent with the principles of constitutional government, and would soon lead to fraud, corruption, oppression and extortion."

██ In the present case, the forfeiture proceedings originally instituted against appellee were properly initiated under R.C. 2925.42. R.C. 2925.42(A)(1)(b) provides that anyone convicted of a felony drug abuse offense forfeits to the state any right, title, or interest in property if the property was used or intended to be used in any manner to commit or facilitate the commission of the felony drug abuse or act. Appellee was indicted on a fourth degree felony drug trafficking charge. However, the procedural requirements in R.C. 2925.42 were not followed in this case because the state dismissed the criminal charges against appellee one day prior to the transfer of title. This transfer occurred outside any forfeiture statute and outside the record of any court. No due process was followed and the rights of appellee to notice and other procedural protections afforded by the forfeiture statutes were disregarded.

Several courts have allowed a defendant in forfeiture/plea agreements cases to waive their right to notice and other procedural protections. Appellants cite *State v. Gladden* (1993), 86 Ohio App.3d 287, 620 N.E.2d 947; *State v. Keith* (1991), 81 Ohio App.3d 192, 610 N.E.2d 1017; *State v. Wyley* (Oct. 20, 1994), Cuyahoga App. No. 66163, unreported, 1994 WL 581522; *State v. Gloeckner* (Mar. 21, 1994), Meigs App. No. 520, unreported, 1994 WL 111337; *State v. McGowan* (Nov. 10, 1993), Cuyahoga App. No. 62465, unreported, 1993 WL 462876, in furtherance of the proposition that appellee could voluntarily relinquish

property to the board of commissioners without a hearing. However, in all of the above cases, the plea agreements were presented to the court, the defendants were represented by counsel, and the defendants were afforded the protection of the Criminal Rules, specifically Crim.R. 11. Appellee in this case was not afforded the procedural protection embodied in the Criminal Rules. Moreover, the entire transaction was performed outside the scope of review of the trial court.

Furthermore, keeping in mind that forfeitures are not favored in law or in equity, forfeiture statutes will be strictly construed. *State v. Lilliock* (1982), 70 Ohio St.2d 23, 25, 24 O.O.3d 64, 65, 434 N.E.2d 723, 724–725. The Ohio Supreme Court has found that forfeiture of property pursuant to R.C. 2925.42 is a form of punishment for a specified offense; thus, it constitutes a fine for purposes of Section 9, Article I of the Ohio Constitution and the Eighth Amendment to the United States Constitution. *State v. Hill* (1994), 70 Ohio St.3d 25, 34, 635 N.E.2d 1248, 1255–1256. As a result, "prior to entering an order of forfeiture, the trial court must make an independent determination whether forfeiture of that property is an 'excessive fine' prohibited by the Excessive Fine Clauses of the Ohio and United States Constitutions." *Id.*

Consequently, because the state failed to properly proceed under R.C. 2925.42, the trial court did not have the opportunity to independently assess whether the forfeiture constituted an excessive fine under the Ohio and United States Constitutions. Again, it is clear that appellee's constitutional right to due process was circumvented by the state's actions in this case.

As a result of the foregoing analysis, we find no error in the trial court's determination that the forfeiture of property in this case was part of a criminal proceeding. Furthermore, we find that the trial court had before it some competent, credible evidence when it determined that the state failed to follow the proper forfeiture procedure under R.C. 2925.42. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578. Because of the criminal nature of the proceeding, appellee should have been guaranteed certain procedural safeguards which were not present in the instant case and which required setting aside the conveyance. Thus, we overrule both of appellants' assignments of error.

Finding no prejudice to the appellants herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment affirmed.*

HADLEY, P.J., and SHAW, J., concur.