OPINION
{¶ 1} Appellant/Cross-Appellee Kenneth W. Koons appeals from the June 4, 2002, Judgment Entry of the Stark County Court of Common Pleas ordering the civil forfeiture of a 2000 Dodge Ram truck to the State of Ohio. Appellee/Cross-Appellant State of Ohio appeals from the June 4, 2002, Judgment Entry of the Stark County Court of Common Pleas declining to issue an order of forfeiture of a 1989 Harley Davidson motorcycle.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On June 27, 2001, appellee filed a complaint for forfeiture of four motorcycles, including a 1989 Harley Davidson motorcycle, one automobile, two trucks, including a 2000 Dodge Ram truck, and a Honda 4-Wheeler pursuant to R.C. 2925.43. Appellee, in its complaint, alleged that the above property "[c]onstitutes, or is derived directly or indirectly from proceeds that were obtained directly or indirectly from the commission of a felony drug abuse offense " and/or "[w]as used or intended to be used in a manner to commit, or to facilitate the commission of a felony drug abuse offense." Appellant Kenneth W. Koons and his nephew, Keith A. Koons, Jr., were named as defendants. After appellant filed an answer, the parties, as memorialized in a Stipulated Judgment Entry filed on August 2, 2001, agreed that a 1997 Dodge Dakota would be released to appellant.
 {¶ 3} Thereafter, a forfeiture hearing commenced on September 24, 2001. Prior to the commencement of the hearing, the parties agreed that the only vehicles remaining at issue were the 2000 Dodge Ram truck and the 1989 Harley Davidson motorcycle. The following evidence was adduced at the forfeiture hearing.
 {¶ 4} Detective Donald Bartolet of the Alliance Police Department testified at the hearing that Keith A. Koons, Jr., appellant's nephew, had been a marijuana trafficker in the City of Alliance for eight years. According to Detective Bartolet, in 1995 or 1996, he first obtained information that Keith A. Koons, Jr. was selling marijuana. Subsequently, in or about 1999, the Alliance Police Department received additional information about Keith A. Koons, Jr. from federal authorities and began working with the ongoing federal investigation of marijuana trafficking involving Koons. After receiving information that the FBI obtained as a result of wiretapping, the Alliance Police Department would periodically conduct surveillance of Keith A. Koons', Jr.'s residence. While the house in which Koons resided was owned by his grandmother, she did not reside there. In addition, the telephone number for the residence was in the grandmother's name.
 {¶ 5} Detective Bartolet testified that during the surveillance, "[w]e observed the supplier, Ninan (sic) Fila go to the residence. Ninan (sic) Fila delivered 40 pounds of marijuana that he carried in the truck of his vehicle in a black duffle bag." Transcript at 14. In his statement to federal authorities, Fila stated that he had sold between 400 and 500 pounds of marijuana to Koons over a period of several years and was paid in cash. According to Detective Bartolet, Koons, who paid $25,000.00 for 40 pounds of marijuana, then resold the marijuana for $1,000.00 per pound, "thereby netting $15,000 . . . over an above what he had obtained the marijuana for." Transcript at 15.
 {¶ 6} During the surveillance of Keith A. Koons, Jr., Detective Bartolet observed a 2000 Dodge Ram truck that Koons "solely operated and possessed", a 1991 Camaro, and several motorcycles, and all terrain vehicles at the place where Koons was residing. Detective Bartolet believed that a Harley Davidson motorcycle was located in a shed in back of the property. Detective Bartolet further testified that he never saw anyone other than appellant operate any of the vehicles. The following testimony was adduced when the Detective was asked whether he was aware of the license plate that was on the 2000 Dodge Ram truck:
 {¶ 7} "A. Yes, sir.
 {¶ 8} "Q. And what was that?
 {¶ 9} "A. KAK Dog I, the initials of Keith Allen Koons, Jr. and also a nickname he went by, Dog, KK Dog.
 {¶ 10} "Q. Can you explain the nickname that he went by?
 {¶ 11} "A. The KK Dog or Koon Dog.
 {¶ 12} "Q. KK Dog was another license plate on a different vehicle?
 {¶ 13} "A. I believe that was on the `91 Camaro.
 {¶ 14} "Q. Would that be KK-Dog-1?
 {¶ 15} "A. That's it, sir.
 {¶ 16} "Q. How long had you known that Keith A. Koons, Jr. had gone by the name of Koon Dog or KK Dog?
 {¶ 17} "A. Since I been a police officer, sir." Transcript at 17-18. Detective Bartolet also testified that he saw Keith A. Koons, Jr. ride the Harley Davidson motorcycle, the license plate of which read "KK Dog", approximately a half a dozen times over a six year period. Transcript at 19. During the relevant period of time, Keith A. Koons, Jr. had no regular employment. After Keith A. Koons, Jr. was arrested, he told Detective Bartolet that he had been selling marijuana and that "[t]hat was his income." Transcript at 23. Keith A. Koons, Jr. was subsequently indicted for possession of marijuana, a felony of the fifth degree, and later pled guilty to such charge.
 {¶ 18} During execution of a warrant on Keith A. Koons, Jr.'s residence, a number of vehicles were seized, including the 2000 Dodge Ram truck. As part of his investigation, Detective Bartolet learned that the 2000 Dodge Ram truck had been purchased for $28, 439.87 in November of 1999 from Salem Autorama. Of the total purchase price, $9,900.00 was paid in cash, $8,539.87 was paid in the form of a check from appellant, and the remainder was financed. When questioned during the forfeiture hearing about the source of the cash, appellant testified that the money came from repayment of a loan that he had made to a friend, Jeffrey Stuchell. Stuchell himself testified that, after he was hurt in an accident in 1993, appellant loaned him a total of $15,000.00. Stuchell further testified that he later paid appellant back in one lump sum cash payment after saving money from each pay check.
 {¶ 19} According to Detective Bartolet, at the time of the purchase of the 2000 Dodge Ram truck, both Keith A. Koons, Jr. and appellant, his uncle, were present. When asked whether the truck salesman had contact with Keith A. Koons, Jr. after the purchase of the truck, the Detective responded as follows:
 {¶ 20} "Q. And what was that?
 {¶ 21} "A. When the vehicle had, was brought in to have the accessories put on, the roll bars, the chrome, effects for the truck, the truck was going to be dropped off by Keith Koons, Jr.
 {¶ 22} "And Kenneth Koons contacted Emge [the salesman] and told him not to bring the truck to his Cindy Avenue address but to bring it to 1048 Fairfield. He also stated that his nephew would be bringing the truck in.
 {¶ 23} "Q. And he stated that his nephew brought the truck in for putting on those additional accessories?
 {¶ 24} "A. Yes, sir, as well as a maintenance problem with a speaker. Emge stated that he observed Keith Koons bring the vehicle to the dealership on several occasions, at least three or four." Transcript at 32-33. During cross-examination, the Detective conceded that the title to the 2000 Dodge Ram truck was in appellant's name, that appellant's name was on the temporary tag registration for the truck, that the loan for the purchase of the truck was in appellant's name, and that the insurance forms for the truck were signed by appellant. When questioned during cross-examination about the purchase of the Dodge Ram truck, the Detective testified that the transaction was not normal since, based on appellant's high annual income, the "transaction does not make much sense why he [appellant], . . . would pay a large sum of cash just under the $10,000 that would need to be reported to the IRS, and then a $8500 check amount." Transcript at 41-42. The Detective further testified on cross-examination that the 1989 Harley Davidson motorcycle was in appellant's name and that he had no evidence that Keith A. Koons, Jr. had purchased the same.
 {¶ 25} At the forfeiture hearing, appellant testified that he has been employed by Daimler Chrysler for approximately 31 years, that, in 1999, his income from Daimler Chrysler was $167,000.00 and that, in 2000, he earned a total of $181,287.00 from Daimler Chrysler. During 1999 and 2000, appellant worked an average of 14 hours a day seven days a week as a supervisor. As an employee of Daimler Chrysler, appellant can purchase Daimler Chrysler vehicles for 10% over invoice with the restriction that such discount is limited to family members. A nephew, according to appellant, is not included within the definition of a "family member." Appellant further testified that, since he has been employed at Daimler Chrysler, he has been called "Koon Dog", "Dog" and "KK Dog" and that he uses the nickname "Koon Dog" on his vehicle license plates. Transcript at 66. According to appellant, while the license plate on the 1989 Harley reads "Koon DG", the license plate on the Dodge Ram reads "KAK" since "I ran out of K's, and my brother Keith is KAK[1], and I use his initials." Transcript at 66.
 {¶ 26} Appellant, at the hearing, also testified that he purchased the 1989 Harley Davidson in 1996 from a fellow employee, that he has had the same in his possession since he purchased the motorcycle, and that he has allowed Keith A. Koons, Jr., his nephew, to drive it on occasions. During the hearing, Gerald Davila, appellant's co-worker, testified that appellant purchased the 1989 Harley Davidson motorcycle from him three years ago for $5,000.00. While one of the two payments that appellant made to Davila was in cash, the other was by check. With respect to the 2000 Dodge Ram, appellant testified that he purchased the truck in November of 1999 and that he paid the down payment by both cash and a check since he did not have enough money in his checkbook at the time to write only a check. According to appellant, he took his nephew, Keith A. Koons, Jr., with him when appellant purchased the Dodge Ram so that his nephew could drive one of the vehicles home. Appellant further testified that his nephew did not give him any money towards the purchase of the Dodge Ram truck, that he subsequently paid off the truck using money that he earned working overtime at Daimler Chrysler, and that he previously had made substantial cash down payments when purchasing vehicles. When questioned, appellant testified that he allowed his nephew, Keith A. Koons, Jr., to use the truck to go to and from work as a drywaller since Koons' car had broken down and "with him having a new baby, I did not want to see him not have transportation." Transcript at 72.
 {¶ 27} While appellant has a total of six vehicles in his name, he testified that he allowed Keith A. Koons, Jr. to drive any of the vehicles and that he "allowed the one [the Dodge Ram truck] to go over to my nephew's because it was convenient." Transcript at 81. Appellant also testified that both the Dodge Ram truck and the Harley Davidson were insured with Allstate Insurance and that, as of the date of the hearing, the insurance was still in effect. After the hearing, the parties submitted a written stipulation to the trial court stating that the Dodge Ram truck was insured effective November 18, 1999.
 {¶ 28} Thereafter, as memorialized in a Judgment Entry filed on June 4, 2002, the trial court issued an order of civil forfeiture with respect to the 2000 Dodge Ram truck but declined to issue such an order with respect to the 1989 Harley Davidson motorcycle. The trial court, in so holding, stated, in pertinent part, as follows:
 {¶ 29} ". . . The Court does not find that there was clear and convincing evidence that the 1989 Harley Davidson motorcycle was purchased by proceeds from the commission of an act which could be prosecuted as a felony drug offense. In regard to the former [the Dodge Ram truck], the manner in which the vehicle was purchased, the person who exercised dominion in [sic] control over the vehicle and that it fit the lifestyle of Keith A. Koons in other manners does convince the Court by clear and convincing proof that it was in fact his notwithstanding the fact that it was titled in his uncle's name. However, in regard to the 1989 Harley Davidson motorcycle, the only evidence linking Keith A. Koons to the motorcycle was that Detective Bartolet testified that over a period of approximately six years he, Detective Bartolet, saw Keith A. Koons driving the motorcycle six times over the last six years. There is not other evidence linking Keith A. Koons to the 1989 motorcycle."
 {¶ 30} It is from the trial court's June 4, 2002, Judgment Entry that appellant now appeals, raising the following assignments of error:
 {¶ 31} "I. The trial court erred in broadly construing the meaning and application of sec. 2925.43(A)(1) of the Ohio Revised Code because the underlying offense was possession of drugs and there can be no proceeds derived from such an offense.
 {¶ 32} "II. The appellant was deprived of private property without due process of law in violation of Sections 16 and 19, Article I of the Constitution of Ohio, and Section I of theFourteenth Amendment to the Constitution of the United States because the trial court erred in its construction and application of Section 2925.42 (F)(3)-(5) of the Ohio Revised Code when it applied the standard of clear and convincing evidence of the petition of the appellant.
 {¶ 33} "III. The trial court's order of forfeiture with respect to the 2000 Dodge Ram truck was against the manifest eight of the evidence."
 {¶ 34} On Cross-appeal, appellee raises the following assignment of error:
 {¶ 35} "I. In light of the trial court's finding with respect to the 2000 Dodge Ram truck and the relationship between the parties, the trial court erred in making a contrary finding with respect to the 1989 Harley Davidson motorcycle."
 I {¶ 36} Appellant, in his first assignment of error, argues that the trial court erred in broadly construing the meaning and application of R.C. 2925.43(A). Appellant specifically contends that the trial court erred in ordering the forfeiture of the 2000 Dodge Ram truck pursuant to such section when the underlying offense of possession of drugs "cannot produce proceeds that could be used to purchase the property."
 {¶ 37} R.C. 2925.43(A) states, in relevant part, as follows: " The following property is subject to forfeiture to the state in a civil action as described in division (E) of this section, and no person has any right, title, or interest in the following property:
 {¶ 38} Any property that constitutes, or is derived directly or indirectly from, any proceeds that a person obtained directly or indirectly from the commission of an act that, upon the filing of an indictment, complaint, or information, could be prosecuted as a felony drug abuse offense. . ."[2] Pursuant to R.C. 2925.43(D)(2), "[a] civil action to obtain a civil forfeiture under this section may be commenced as described in division (E) of this section whether or not the adult or juvenile who committed a felony drug abuse offense or an act that, if committed by an adult, would be a felony drug abuse offense has been charged by an indictment, complaint, or information with the commission of such an offense or such an act, has pleaded guilty to or been found guilty of such an offense, has been determined to be a delinquent child for the commission of such an act, has been found not guilty of committing such an offense, or has not been determined to be a delinquent child for the alleged commission of such an act." Thus, R.C. 2925.43
permits the civil forfeiture of property prior to any criminal conviction on the underlying felony drug abuse offense. In re Forfeiture of RealProperty Located at 952 Gilmore Street, Chillicothe, Ohio (Jan. 29, 1997), Ross App. No. 96CA2206. However, the law does not favor forfeitures and statutes imposing forfeiture should be strictly construed, and whenever possible, forfeiture should be avoided. State v.Hill, 70 Ohio St.3d 25, 31, 1994-Ohio-12, 635 N.E.2d 1248.
 {¶ 39} Accordingly, in the case sub judice, in order to determine whether the Dodge Ram truck should be forfeited to the State, the trial court was not limited to the actual underlying offense to which Keith A. Koons, Jr. was indicted and pled which, in the case sub judice, was possession of marijuana. Rather, the trial court was justified in ordering forfeiture of the Dodge Ram truck if Keith A. Koons, Jr. committed a felony drug abuse offense, regardless of whether he had been charged with such offense, and if the truck was purchased directly or indirectly with proceeds from such offense. Thus, contrary to appellant's assertion, the trial court was not limited to consideration of the underlying offense of possession of marijuana.
 {¶ 40} While appellant cites this Court to State v. Walker Allen,Jr.(Jan. 11, 1993), Licking App. No. 92-CA-72 for the proposition that the trial court erred in ordering civil forfeiture of the 2000 Dodge Ram truck since there was "no connection between the completed offense of possession of marijuana and his [Keith A. Koons'] ownership of the truck," we find that such case is distinguishable. In the Allen case, the appellant was stopped for a traffic violation and subsequently arrested for operating a Ford Mustang without a valid driver's license. Upon effectuating the arrest, a loaded pistol was discovered on the appellant's person. After the appellant was convicted for carrying a concealed weapon, the State filed a petition for forfeiture of the Mustang pursuant to R.C. 2933.43(A). The trial court granted the same and the appellant appealed. This Court, in reversing the judgment of the trial court, held as follows:
 {¶ 41} "Appellant's conviction for carrying a concealed weapon in violation of R.C. 2923.12(A) was the underlying felony conviction upon which the State based its petition for forfeiture. That statute provides:
 {¶ 42} "No person shall knowingly carry or have, concealed on his person or concealed ready at hand, any deadly weapon or dangerous ordinance.
 {¶ 43} "The facts of this case indicate that the commission of the offense of carrying a concealed weapon occurred at the time appellant concealed the weapon on his person. The fact that appellant, while carrying the concealed weapon on his person, was travelling in his vehicle does not make his vehicle subject to forfeiture because the offense was complete once the weapon was concealed on appellant."
 {¶ 44} As noted by appellee, Allen does not deal with civil drug forfeiture statutes. Rather such case deals with proposed forfeitures pursuant to R.C. 2933.42. Revised Code 2933.42, which is captioned "Offenses involving contraband, forfeiture of property used in committing violation," states in part, as follows: "(A) No person shall possess, conceal, transport, receive, purchase, sell, lease, rent, or otherwise transfer any contraband." (Emphasis added.) Thus, since Allen pertains to seizure of contraband under R.C. 2933.43(C), such case is inapplicable to the case sub judice, which involves a seizure pursuant to R.C. 2925.43.
 {¶ 45} Based on the foregoing, we find that the trial court did not improperly construe the
 {¶ 46} meaning and application of R.C. 2925.43(A)(1).
 {¶ 47} Appellant's first assignment of error is, therefore, overruled.
 II {¶ 48} Appellant, in his second assignment of error, argues that the trial court deprived appellant of private property without due process of law. Appellant specifically contends that the trial court erred in construing and applying R.C. 2925.42(F)(3)-(5) "when it applied the standard of clear and convincing evidence to the petition of the appellant."
 {¶ 49} R.C. 2925.43(E)(3) states that the procedures set forth in R.C. 2925.42(F)(3) to (F)(5) apply to civil forfeitures. In turn, R.C. 2925.42(F)(3) states, in part, as follows:
 {¶ 50} "(a) Any person, other than the adult offender whose conviction or guilty plea or the delinquent child whose adjudication is the basis of the order of forfeiture, who asserts a legal right, title, or interest in the property that is the subject of the order may petition the court that issued the order, within thirty days after the earlier of the final publication of notice or the person's receipt of notice under division (F)(2) of this section, for a hearing to adjudicate the validity of the person's alleged right, title, or interest in the property. " Pursuant to R.C. 2925.42(F)(4), after such a petition is filed, "the court shall hold a hearing to determine the validity of the petitioner's right, title, or interest in the property that is the subject of theorder of forfeiture." (Emphasis added). R.C. 2925.42(F)(5)(a) further provides as follows:
 {¶ 51} "The court shall amend its order of forfeiture in accordance with its determination if it determines, at the hearing, that the petitioner has established either of the following by a preponderanceof the evidence:
 {¶ 52} "(i) The petitioner has a legal right, title, or interest in the property that renders the order of forfeiture completely or partially invalid because it was vested in the petitioner, rather than the adult offender whose conviction or guilty plea or the delinquent child whose adjudication is the basis of the order, or was superior to any right, title, or interest of that offender, at the time of the commission of the felony drug abuse offense or act that is the basis of the order." (Emphasis added). Thus, R.C. 2925.42(F) sets forth a procedure for an individual other than the offender to assert a claim of lawful ownership of property that already has been ordered forfeited. See Chesney v.Tobin (Jan. 22, 1998), Columbiana App. No. 97-CO-24 and R.C. 2925.42.
 {¶ 53} In turn, pursuant to R.C. 2925.43(E)(4) the state must prove its case for forfeiture of the property by clear and convincing evidence.
 {¶ 54} The trial court, in its June 4, 2002, Judgment Entry ordering forfeiture of the 2000 Dodge Ram truck, specifically found that there was clear and convincing evidence that the 2000 Dodge Ram truck was purchased using funds that Keith A. Koons, Jr. had derived from the proceeds of a felony drug abuse offense. Since the 2000 Dodge Ram truck was not, at such time, already the subject of an order of forfeiture, R.C. 2925.42(F) was not applicable. As noted by appellee, "[b]ecause appellant was the titled owner of the Doge Ram truck . . ., it was necessary for the State to prove by clear and convincing evidence that Appellant's bare title to the vehicle was held for the benefit of his nephew, . . . Keith A. Koon, Jr."
 {¶ 55} Upon reviewing the propriety of the seizure of the 2000 Dodge Ram truck, the trial court, pursuant to R.C. 2925.43(C)(4) was required to determine whether the State established by clear and convincing evidence that the 2000 Dodge Ram truck was purchased using funds that Keith A. Koons, Jr. derived, directly or indirectly, from the proceeds of a felony drug abuse offense. The trial court, in its June 4, 2002, entry, clearly found that the State had met such burden.
 {¶ 56} Appellant's second assignment of error is, therefore, overruled.
 III {¶ 57} Appellant, in his third assignment of error, contends that the trial court's findings and order with respect to the 2000 Dodge Ram truck were against the manifest weight of the evidence. Appellant specifically challenges the trial court's determination that the Dodge Ram truck belonged to Keith A. Koons, Jr. based on the manner in which the truck was purchased, the fact that Keith A. Koons. Jr. exercised "dominion in [sic] control" over the truck, and that the truck fit Koons' lifestyle.
 {¶ 58} As a reviewing court we will not disturb the judgment of the trial court as contrary to the weight of the evidence where there is some competent, credible evidence supporting the judgment. C.E. MorrisCo. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, 376 N.E.2d 578. We find, based upon our review of the evidence, that there was some competent, credible evidence from which the trial court could conclude that Keith A. Koons, Jr. was the actual owner of the 2000 Dodge Ram truck.
 {¶ 59} As is set forth in detail in the statement of facts, testimony was adduced at the forfeiture hearing that Keith A. Koons, Jr. was not regularly employed, that he had no education and that he had been under investigation for trafficking in marijuana since 1996. Koons, who was observed engaging in marijuana trafficking that netted him substantial sums of money, told Detective Bartolet that he supported his family by selling marijuana and that it was his only source of income. When Koons was arrested, he had a total of $2,192.00 in his possession. In addition, the 2000 Dodge Ram truck, the license plate of which (KAK Dog 1) bore Keith A. Koons' initials rather that appellant's[3], was in his possession. According to Detective Bartolet, Koons also went by the nickname "KK Dog" or "Koon Dog". Transcript at 18.
 {¶ 60} During his testimony, Detective Bartolet stated that he never saw anyone other than Keith A. Koons, Jr. drive the 2000 Dodge Ram truck. When he later spoke with the salesman who sold the truck, the Detective discovered that both appellant and Keith A. Koons were present when the truck was ordered. However, the truck was delivered to Keith A. Koons, Jr.'s residence and picked up from Keith A. Koons, Jr.'s residence when repairs were required. In addition, Keith A. Koons, Jr. took the truck in to have the accessories put on. Testimony was also adduced at the hearing that the 2000 Dodge Ram truck was paid, in part, with $9,900.00 in cash despite the fact that appellant had $10,000.00 in cash on his person at the time. Appellant, during cross-examination, indicated that the reason he paid only $9,900.00 in cash was to avoid having to file a currency transaction report. The balance of the purchase price of the $28,439.87 truck was paid in an unusually short period of time. Finally, Detective Bartolet testified at the hearing that drug dealers often keep property in relatives' names to avoid forfeiture. According to the Detective, Keith A. Koons, Jr. lived in a house that was in his grandmother's name and all of the utilities were in her name.
 {¶ 61} Based on the foregoing, we find that there was competent and credible evidence supporting the trial court's determination that Keith A. Koons, Jr. was the true owner of the 2000 Dodge Ram truck and that he purchased the same using proceeds from felony drug abuse offenses.
 {¶ 62} Appellant's third assignment of error is, therefore, overruled.
 Cross-Appeal {¶ 63} Appellee, in its sole assignment of error on cross-appeal, maintains that the trial court erred in failing to issue an order of forfeiture with respect to the 1989 Harley Davidson. The trial court, in its June 4, 2002, Judgment Entry, held, in part, as follows: "in regard to the 1989 Harley Davidson motorcycle, the only evidence linking Keith A. Koons to the motorcycle was that Detective Bartolet testified that over a period of approximately six years he, Detective Bartolet, saw Keith A. Koons driving the motorcycle six times over the last six years." In essence, appellee now argues that such decision was against the manifest weight of the evidence.
 {¶ 64} In the case sub judice, testimony was adduced at the forfeiture hearing that appellant purchased the motorcycle in 1996 from a co-worker for approximately $5,000.00. The co-worker, Gerald Davila, testified that he sold the motorcycle to appellant for $5,000.00 and that he was paid in two installments by appellant. The motorcycle was seized from appellant's residence — not from Koons'. As is stated above, Detective Bartolet testified that he saw Keith A. Koons drive the motorcycle six times over a six year period.
 {¶ 65} Based on the foregoing, we find that there was competent and credible evidence supporting the trial court's holding that the 1989 Harley Davidson motorcycle did not belong to Keith A. Koons, Jr. but rather to appellant.
 {¶ 66} Appellee's sole assignment of error is, therefore, overruled.
 {¶ 67} Accordingly, the judgment of the Stark County Court of Common Pleas is affirmed.
By Edwards, J., Hoffman, P.J. and Farmer, J. concur.
In Re: Forfeiture of car and motorcycle.
[1] Appellant's brother, Keith A. Koons, Sr., died over five years ago.
[2] As stated by appellant in his brief, the State stipulated at trial that it was not seeking forfeiture of the Dodge Ram truck and the Harley Davidson motorcycle on a theory that the vehicles were used in a drug abuse offense.
[3] Appellant's initials are KWK.