DECISION AND JOURNAL ENTRY
{¶ 1} Defendant-Appellant Jeffery C. Canfield has appealed from the decision of the Medina County Court of Common Pleas. This Court affirms.
 I {¶ 2} On February 27, 2002, Appellant was indicted by the Medina County Grand Jury on four counts of rape with force, in violation of R.C. 2907.02(A)(1)(b) and (A)(2); and one count of sexual battery, in violation of R.C. 2907.03(A)(5). Appellant was charged for acts that allegedly occurred from September 1, 1993 through June 1, 1995. The victim was Appellant's daughter, who was under the age of thirteen when the sexual relationship began. Appellant initially entered a plea of not guilty and the matter was set for a jury trial. Seven days before the first day of trial was scheduled to occur, Appellant filed a motion for leave to file a motion to suppress. The trial court granted the motion and Appellant filed a motion to suppress on May 14, 2002. A hearing was held on Appellant's motion to suppress [1] and the trial court denied the motion on July 2, 2002.
 {¶ 3} On November 8, 2002, Appellant changed his plea and pleaded no contest to four counts of rape, in violation of R.C.2907.02(A)(2),[2] an aggravated felony of the first degree; and one count of sexual battery, in violation of R.C.2907.03(A)(5), a third degree felony. A sentencing hearing and sexual predator hearing were held on May 23, 2003. Appellant was adjudicated a sexual predator and he was sentenced to not less than eight years and not more than twenty-five years on each count of rape and a period of not less than one year on the one count of sexual battery. The trial court ordered the sentences to run concurrently.
 {¶ 4} Appellant has timely appealed the trial court's decision, asserting three assignments of error.
 II Assignment of Error Number One
"The court erred in sentencing, as a matter of law, when it failed to consider sentencing [appellant] to a term of actual incarceration pursuant to [R.C. 2929.11(B)(1)(a).]"
 {¶ 5} In Appellant's first assignment of error, he has argued that the trial court erred when it sentenced him to an indefinite term of eight to twenty-five years incarceration. This Court disagrees.
 {¶ 6} In reviewing sentencing decisions, the Ohio Supreme Court has held that "an appellate court will not review a trial court's exercise of discretion in sentencing when the sentence is authorized by statute and is within the statutory limits." Statev. Hill (1994), 70 Ohio St.3d 25, 29. Thus, this Court will not disturb the trial court's sentencing decision unless we find that the trial court abused its discretion when it imposed sentence upon Appellant. Abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. State v. Adams
(1980), 62 Ohio St.2d 151, 157.
 {¶ 7} In determining whether the trial court abused its discretion when it sentenced Appellant to an indefinite term of incarceration, this Court must first determine which version of R.C. 2929.11 should be applied to the instant case. Effective July 1, 1996, R.C. 2929.11 was amended by Am.Sub.S.B. No. 2. After July 1, 1996, subsections (A) and (B) of R.C. 2929.11 no longer contained the same language; specifically, R.C.2929.11(B)(1)(a) no longer contained the language that allowed a trial court to impose an actual term of incarceration on a first time offender. Appellant has argued that the trial court should have applied the version of R.C. 2929.11 that was in effect prior to July 1, 1996. The State, in its appellate brief, agreed that the trial court should have applied the version of R.C. 2929.11
in effect before Am.Sub.S.B. No. 2 was effective.
 {¶ 8} Appellant was charged for crimes that occurred between 1993 and 1995, which was before Am.Sub.S.B. No. 2 changed R.C.2929.11. However, Appellant was not convicted of the crimes for which he was charged until May of 2003. Because the date of Appellant's offense is before 2929.11 was amended and he was convicted after the amendments, this Court must look to the Ohio Supreme Court's decision in State v. Rush (1998),83 Ohio St.3d 53, certiorari denied (1999), 525 U.S. 1151, 119 S.Ct. 1052,143 L.Ed.2d 58. In that case, the Ohio Supreme Court had to determine "whether the amended sentencing provisions of S.B. 2 are applicable to those defendants who committed crimes prior to, but were convicted after, its July 1, 1996 effective date." Id. at 55. The court concluded that the Am.Sub.S.B. No. 2 sentencing provisions were inapplicable to defendants that committed crimes before July 1, 1996, but were convicted of those crimes after July 1, 1996. Id. at 55. Am.Sub.S.B. No. 2 applied "only to those crimes committed on or after July 1, 1996." Id. at paragraph two of the syllabus.
 {¶ 9} Based upon the Ohio Supreme Court's holding in Rush,
we conclude that the trial court should have applied the pre-S.B.2 version of R.C. 2929.11. Prior to July 1, 1996, R.C.2929.11(A), provided, in material part:
"(A) Whoever is convicted of or pleads guilty to a felony other than aggravated murder or murder, except as provided in [R.C.2929.11 (D), (E), or (H)] or [R.C. 2929.23], shall be imprisoned for an indefinite term and, in addition, may be fined or required to make restitution, or both. The indefinite term of imprisonment shall consist of a maximum term as provided in this section and a minimum term fixed by the court as provided in this section. The fine and restitution shall be fixed by the court as provided in this section.
"Whoever is convicted of or pleads guilty to committing, attempting to commit, or complicity in committing a felony violation of [R.C. 2909.02 or R.C. 2909.03] and is sentenced to an indefinite term of imprisonment shall be required to reimburse agencies for their investigation or prosecution costs in accordance with [R.C. 2929.28]."
 {¶ 10} Prior to July 1, 1996, R.C. 2929.11(B)(1)(a) also provided:
"(B) Except as provided in [R.C. 2929.11(D) or (H)], [R.C.2929.71 and R.C. 2929.72], and Chapter 2925 of the Revised Code, terms of imprisonment for a felony shall be imposed as follows:
"(1) For an aggravated felony of the first degree:
"(a) If the offender has not previously been convicted of or pleaded guilty to any aggravated felony of the first, second, or third degree, aggravated murder or murder, or any offense set forth in any existing or former law of this state, any other state, or the United States that is substantially equivalent to any aggravated felony of the first, second, or third degree or to aggravated murder or murder, the minimum term, which may beimposed as a term of actual incarceration, shall be five, six, seven, eight, nine, or ten years, and the maximum term shall be twenty-five years[.]" (Emphasis added.)
 {¶ 11} Appellant was convicted of violating R.C.2907.02(A)(2) and R.C. 2907.03(A)(5). Under the statute in effect at the time of Appellant's rape offense, a violation of former R.C. 2907.02(A)(2) was an aggravated felony of the first degree.[3] Because Appellant was charged with an aggravated felony, R.C. 2929.11(B)(1)(a) applies. Pursuant to former R.C. 2929.11(B)(1)(a), a defendant convicted of an aggravated felony of the first degree, shall be sentenced to "the minimum term, which may be imposed as a term of actual incarceration, shall be five, six, seven, eight, nine, or ten years, and the maximum term shall be twenty-five years[.]" R.C.2929.11(B)(1)(a). The record reveals that the trial court complied with R.C. 2929.11(B)(1)(a); Appellant was sentenced to a minimum of eight years and a maximum of twenty-five years incarceration. Contrary to Appellant's arguments, the record does not reveal that the trial court failed to consider whether Appellant could be sentenced to "actual incarceration." The transcript of the sentencing hearing shows that the trial court believed that it could not sentence Appellant to a definitesentence; the trial court never discussed "actual incarceration."
 {¶ 12} A "definite term of incarceration" is the not the same as an "actual term of incarceration." A "definite term of incarceration" is defined as "`[a] sentence for a fixed length of time rather than for an unspecified duration.'" State v.Radcliff (Dec. 19, 2000), 4th Dist. No. 99CA535, 2000 Ohio App. LEXIS 6338, at *4, n. 3, quoting Black's Law Dictionary 1367 (7th ed. 1999). A defendant who is sentenced to a "definite term of incarceration" can have the sentence suspended, and the trial court can place the defendant on probation. The term "actual incarceration" is a statutorily defined term, which means:
"[T]hat an offender is required to be imprisoned for the stated period of time to which he is sentenced that is specified as a term of actual incarceration. If a person is sentenced to a term of actual incarceration, the court shall not suspend his term of actual incarceration, and shall not grant him probation or shock probation, pursuant to [R.C. 2929.51], [R.C. 2947.061], [R.C.2951.02] or [R.C. 2951.04] * * *." Pre-S.B. 2 R.C. 2929.01(C).
 {¶ 13} Unlike a "definite term of incarceration," an "actual term of incarceration" precludes probation and a person who receives a sentence of actual incarceration is entitled to "good time" credit for good behavior in prison. Pre-S.B.2 R.C.2929.01(C); see, also, State v. Drake (May 24, 1989), 9th Dist. No. 88CA004443; State v. Collins (Oct. 21, 1999), 8th Dist. No. 75503, 1999 Ohio App. LEXIS 4913, at *14. Furthermore, a defendant that is sentenced to an "actual term of incarceration" is still capable of completing an "indefinite term of incarceration."[4] That is, pursuant to R.C.2929.11(B)(1)(a), a trial court could sentence a defendant that committed an aggravated felony in the first degree to an "indefinite term of incarceration" and at the same time order the defendant to serve the minimum term as "actual incarceration." For example, a defendant convicted of rape in 1996, a violation of R.C. 2907.02(A)(2) and an aggravated felony of the first degree, could be sentenced to a minimum term of five years "actual incarceration" and to a maximum term of twenty-five years. Such a sentence is not a "definite term of incarceration," but an "indefinite term of incarceration," part of which is served as "actual incarceration." Because the trial court only stated that it did not have the authority to sentence Appellant to a "definite term of incarceration," we reject Appellant's arguments.
 {¶ 14} For the foregoing reasons, this Court finds that the trial court did not abuse its discretion when it failed to consider the possibility that it could sentence Appellant to a definite term of incarceration. Consequently, we find that Appellant's first assignment of error lacks merit.
 Assignment of Error Number Two
"The evidence was insufficient, as a matter of law, to prove by `clear and convincing evidence' that [appellant] `is likely to engage in the future in one or more [sexually] oriented offenses' as required by [R.C. 2950.09(B) (4]."
 {¶ 15} In Appellant's second assignment of error, he has argued that there was insufficient evidence to conclude that that Appellant was likely to commit a future sexually oriented offense. This Court disagrees.
 {¶ 16} In reviewing the trial court's decision, this Court must apply the clearly erroneous standard. State v. Unrue, 9th Dist. No. 21105, 2002-Ohio-7002, at ¶ 6, appeal denied (2003),98 Ohio St.3d 1540, 2003-Ohio-1946. When applying the clearly erroneous standard of review to sexual predator adjudications, this Court must determine whether there exists some competent, credible evidence in the record that would clearly and convincingly support a conclusion that a defendant is likely to commit another sexual offense. Unrue, 2002-Ohio-7002, at ¶ 10. This Court explained:
"[The clearly erroneous standard of review] is highly deferential and even `some' evidence is sufficient to sustain the judgment and prevent reversal. * * * Thus, this Court is guided by a presumption that the findings of a trial court are correct, since the trial court is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use those observations in weighing the credibility of the proffered testimony." (Citations and quotations omitted.) Id. at ¶ 9, citing Spinetti v. Spinetti (Mar. 14, 2001), 9th Dist. No. 20113, at 7-8.
 {¶ 17} When reviewing a sexual predator determination, reviewing court should not substitute its judgment for that of the trial court where competent and credible evidence supports the trial court's findings. State v. Clark, 9th Dist. No. 21167, 2003-Ohio-94, at ¶ 5, citing Wisintainer v. Elcen PowerStrut Co. (1993), 67 Ohio St.3d 352, 355.
 {¶ 18} R.C. 2950.01 et seq. governs the classification of a defendant as a sexual predator. In order to be classified a sexual predator (1) a person must be convicted of a sexually oriented offense and (2) the state must prove by clear and convincing evidence that the defendant is likely to be a repeat sexual offender. R.C. 2950.01(E)(1). Appellant does not contend that he was not convicted of a sexually oriented offense. Therefore, the only issue to be resolved by this Court is whether the state failed to prove by clear and convincing evidence that Appellant is likely to commit another sexually oriented offense. See State v. Williams (2000), 88 Ohio St.3d 513, 533, certiorari denied (2000), 531 U.S. 902, 121 S.Ct. 241,148 L.Ed.2d 173, quoting State v. Ward (1999), 130 Ohio App.3d 551,569 ("[T]he clear-and-convincing-evidence standard require[s] the state to present evidence that would give the court a firm belief or conviction that [a] defendant [is] likely to commit another sexually oriented offense in the future."). The clear and convincing standard "is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." State v. Eppinger (2001),91 Ohio St.3d 158, 164, quoting Cross v. Ledford (1954),161 Ohio St. 469, 477.
 {¶ 19} Appellant has contended that there was insufficient evidence to conclude that he was likely to re-offend. Appellant has argued that the trial court based its decision on the testimony presented by Dr. Urdzik, a clinical therapist with Cornerstone Psychological Services and a man "who never even saw [Appellant] before the trial, much less interviewed him regarding his likelihood of recidivism." After reviewing the evidence presented at the hearing, this Court rejects Appellant's arguments.
 {¶ 20} In determining whether an offender is likely to commit another sexually oriented offense, i.e., is a sexual predator, R.C. 2950.09(B)(3) requires the trial court to consider all relevant factors including, but not limited to:
"(a) The offender's * * * age;
"(b) The offender's * * * prior criminal * * * record regarding all offenses, including, but not limited to, all sexual offenses;
"(c) The age of the victim of the sexually oriented offense for which sentence is to be imposed * * *;
"(d) Whether the sexually oriented offense for which sentence is to be imposed * * * involved multiple victims;
"(e) Whether the offender * * * used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
"(f) If the offender * * * previously has been convicted of or pleaded guilty to * * * a criminal offense, whether the offender * * * completed any sentence * * * imposed for the prior offense * * * and, if the prior offense * * * was a sex offense or a sexually oriented offense, whether the offender * * * participated in available programs for sexual offenders;
"(g) Any mental illness or mental disability of the offender * * *;
"(h) The nature of the offender's * * * sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
"(i) Whether the offender * * *, during the commission of the sexually oriented offense for which sentence is to be imposed * * *, displayed cruelty or made one or more threats of cruelty;
"(j) Any additional behavioral characteristics that contribute to the offender's * * * conduct."
 {¶ 21} At the sentencing hearing, the state presented testimony from Detective Kevin Ross and Dr. Charles Urdzik. Detective Kevin Ross, a detective with the Medina County Sheriff's Department, testified that he was the chief investigating officer in Appellant's case. Detective Ross explained that the victim was Appellant's daughter, who was approximately ten years old when the sexual offenses first occurred. He explained that Appellant indulged in sexual acts, which included "digital penetration, forcible oral sex, penetration, or slight penetration with the penis[,]" with the victim from the age of ten until the child was fourteen years old. Detective Ross testified that the victim told him that Appellant used force when he committed these sexual acts. She explained that Appellant "placed his hand on the back of her head and forced her down to perform oral sex on him."
 {¶ 22} Detective Ross further explained that through the course of the investigation he learned that Appellant had previously committed illegal sexual acts against another victim, Appellant's niece. The detective explained that Appellant's niece was thirteen years old at the time the sexual acts occurred. Detective Ross also testified that in July 2001, "a report was filed with the Medina County Sheriff's Office in reference to a similar incident where [Appellant] and I believe either his niece or cousin, she was over the age of eighteen, were at a hotel at 83 and 71, and she contacted the Sheriff's Office and made allegations of him touching her." Detective Ross stated that he interviewed Appellant and he testified that during the interview Appellant admitted to "digitally penetrating [his daughter], he admitted that he attempted to place his penis inside her vagina, but he refused, or denied the fact that he forced her to perform oral sex on him." Appellant explained to the detective that "the reason that [the sexual acts] occurred between him and his daughter is that he was separated from his wife, and he needed a warm body."
 {¶ 23} During direct examination, Dr. Urdzik explained that he had a Ph.D. from Kent State in psychology, and that he had treated sexual offenders in both the private and public sector. He explained that the "bulk of [his] practice is [to] provide risk assessments for both adolescent and adult sexual offenders." In conducting a recidivism assessment of a defendant, Dr. Urdzik explained that he looks at ten risk factors, which are weighted. He explained that "[n]ot one risk factor would indicate a person is a high risk, we look at the overall picture." Dr. Urdzik further explained:
"[W]e would look at, very important would be the history in terms of any legal priors. We look at the history in terms of any sexual priors.
"We look at the offense, what was the nature of the offense, what was involved in the commission of that offense.
"Was this overt, were there threats involved.
"We look at the issue, what is this person's relationship with the perpetrator.
"Was the perpetrator on the position as a parent, as a caregiver, a teacher, for example.
"What sort of implied power was involved there in terms of the person's status.
"We look at whether there were any drugs or alcohol, any use involved in the commission of the offense.
"We look at the victim's age. The younger the age, the higher the risk.
"We look at especially, very importantly, we look at the offender's assumption of responsibility, does the person, in fact assume responsibility for their behavior, or do they continue to blame the victim, or blame others in regard to the offense.
"Has the person sought treatment, have they been involved in treatment.
"We look that the history, we look at the psychological, is there a diagnosis, is there a psychiatric diagnosis that would be important here. We look at the IQ.
"Again, we do a multi-factor analysis. Not any one factor would indicate either way. They are weighted factors, we look at all of them."
 {¶ 24} The state then posed a hypothetical question to Dr. Urdzik. The state asked Dr. Urdzik:
"Assume the [Appellant], over a period of four years perpetrated sexual offenses upon his daughter, and has entered pleas to those sex offenses, one being rape, four counts of rape, one count of sexual battery.
"Assume further that she was between the ages of ten and fourteen when those offenses happened.
"Assume further that he has been found guilty of committing importuning upon another young child, the age of thirteen, in Wayne County, in Rittman, Ohio.
"Based on these factors, do you have an opinion, within a reasonable degree of professional certainty as to whether or not he will reoffend in the future, and assume further that the victim was forced on occasion to perform oral sex?"
 {¶ 25} Dr. Urdzik responded: "If I did the complete review, the factors would put him at a high risk to recidivate or reoffend."
 {¶ 26} The doctor admitted on cross-examination that he had never met Appellant and that he never completed a "standardized risk assessment in an adjusted actuarial approach." Dr. Urdzik further admitted that he never personally tested Appellant "as to the nature for reoffending based upon * * * scientific testing[.]" The doctor did explain, however, that his opinion on Appellant's likelihood to reoffend was based on the hypothetical presented by the State during direct examination and his training and experience, which included over two hundred cases of risk assessment.
 {¶ 27} This Court finds that the evidence presented by Detective Ross and Dr. Urdzik provided "some competent, credible" evidence to support the sexual predator adjudication. From Detective Ross's testimony, the trial court was able to ascertain the age of the victim, who was under the age of thirteen at the time the illegal sexual acts occurred, and which was relevant to the trial court's determination as to Appellant's likelihood to reoffend. See R.C. 2950.09(B)(3)(c). Detective Ross also provided evidence concerning other factors the trial court had to consider in determining Appellant's risk for recidivism: prior criminal history, which included another victim under the age of thirteen years old (see R.C. 2950.09(B)(3)(b)); the familial relationship that existed between the victim and Appellant (see R.C.2950.09[B][3][j]); the fact that he forced the victim to perform oral sex (see R.C. 2950.09[B][3][j]); and the length of time the sexual abuse lasted (see R.C. 2950.09[B][3][h]).
 {¶ 28} Also, Dr. Urdzik provided the trial court with credible evidence to demonstrate that an individual such as Appellant was likely to reoffend. The psychologist's opinion, although based in part on a hypothetical, provided the trial court with credible evidence to reach its determination that Appellant was a sexual predator. This Court further notes that trial courts generally rely on a psychiatrist's or psychologist's answers to hypothetical questions based on facts in the record. We, therefore, reject Appellant's suggestion that Dr. Urdzik's testimony somehow lacked credibility because Dr. Urdzik had never met Appellant.
 {¶ 29} Based on the record as a whole, this Court finds that the State met its burden of proving by clear and convincing evidence that Appellant was likely to commit another sexually oriented offense. Consequently, we find that the trial court did not err in adjudicating Appellant a sexual predator. Appellant's second assignment of error is without merit.
 Assignment of Error Number Three
"The trial court erred in overruling [appellant's] motion to suppress evidence."
 {¶ 30} In Appellant's third assignment of error, he has argued that the trial court erred in denying his motion to suppress because the statements Appellant made to the police were not voluntarily made. This Court disagrees.
 {¶ 31} An appellate court's review of a motion to suppress presents a mixed question of law and fact. State v. Long
(1998), 127 Ohio App.3d 328, 332. In reviewing the trial court's findings of fact, an appellate court must give due weight to inferences drawn from those facts by the trial court because the trial court is in the best position to resolve questions of fact and evaluate the credibility of witnesses. State v. Hopfer
(1996), 112 Ohio App.3d 521, 548, appeal not allowed (1996),77 Ohio St.3d 1488. Accordingly, an appellate court reviews a trial court's findings of fact only for clear error. State v. Russell
(1998), 127 Ohio App.3d 414, 416. A trial court's legal conclusions, however, are reviewed by an appellate court de novo. Id.
 {¶ 32} Under the Fifth Amendment to the United States Constitution, no person shall be compelled to be a witness against himself. Miranda v. Arizona (1966), 384 U.S. 436,86 S.Ct. 1602, 16 L.Ed.2d 694, provides that in order to protect a defendant's Fifth Amendment right against self-incrimination, statements resulting from custodial interrogations are admissible only after a showing that law enforcement officers have followed certain procedural safeguards. Miranda, 384 U.S. at 444. Specifically, an individual must be advised prior to custodial interrogation that 1) he has a right to remain silent, 2) any statement he makes may be used as evidence against him, and 3) he has a right to the presence of an attorney. Id. The protections afforded pursuant to Miranda are not triggered until the defendant is "in custody." Oregon v. Mathiason (1977),429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714.
 {¶ 33} A defendant may, however, waive his Miranda rights, provided that such a waiver is knowingly, voluntarily, and intelligently made. Moran v. Burbine (1986), 475 U.S. 412, 421,106 S.Ct. 1135, 89 L.Ed.2d 410. Further, it is the prosecution's burden to prove, by a preponderance of the evidence, that the defendant knowingly, voluntarily, and intelligently waived those rights based on the totality of the circumstances surrounding the investigation. State v. Gumm (1995), 73 Ohio St.3d 413, 429, certiorari denied (1996), 516 U.S. 1177, 116 S.Ct. 1275,134 L.Ed.2d 221.
 {¶ 34} In the instant case, Appellant has presented this Court with a vague argument that Appellant was under formal arrest when he made certain incriminating statements to the police and that he did not waive his Miranda rights when those statements were made. The State has argued, however, that Appellant was not in custody during questioning and therefore there was no legal basis for the trial court to suppress Appellant's statements to the police. Based upon Appellant's and the State's arguments, this Court should first determine whether Appellant was "in custody" at the time he made incriminating statements to the police. However, because Appellant failed to submit a transcript of the hearing on the motion to suppress, this Court is unable to independently review the record to determine whether Appellant was "in custody" at the time he made incriminating statements to the police.
 {¶ 35} This Court has previously held that when an appellant fails to provide a complete and proper transcript in accordance with App.R. 9(B), a reviewing court will presume the regularity of the proceedings in the trial court. State v. Bell (May 23, 2001), 9th Dist. No. 00CA0060, at 3. Since there is no transcript of the suppression hearing, we are unable to adequately review whether the trial court properly denied the motion to suppress. Therefore we must affirm the decision of the trial court. As such, Appellant's third assignment of error is not well taken.
 III {¶ 36} Appellant's assignments of error are overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
Baird and Slaby, JJ., concur.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
[1] The record reveals that the only transcript filed with this Court was for the sexual predator and sentencing hearing that took place March 21, 2003, April 18, 2003, and May 23, 2003. Appellant failed to file a transcript of the hearing on the motion to suppress.
[2] This Court notes that Appellant's crimes were committed from 1993 to 1995, therefore this Court must look at the statute that was in effect at that time.
[3] Prior to Senate Bill 2, R.C. 2907.02 provided, in pertinent part:
"(A)(2) No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force.
"(B) Whoever violates this section is guilty of rape, an aggravated felony of the first degree. * * *"
[4] An "indefinite term of incarceration" is defined as "`[a] a sentence of an unspecified duration, such as one for a term of 10 to 20 years.'" (Alterations sic.) State v. Radcliff (Dec. 19, 2000), 4th Dist. No. 99CA535, 2000 Ohio App. LEXIS 6338, at *4, n. 3, quoting Black's Law Dictionary 1367 (7th ed. 1999).