OPINION
{¶ 1} The state appeals from a judgment of the Montgomery County Court of Common Pleas, which dismissed a count of felonious assault against James R. Kaeff.
 {¶ 2} Kaeff was indicted for domestic violence in February 2004. On March 12, 2004, Kaeff was reindicted on one count of domestic violence and one count of felonious assault with a deadly weapon, based on the same incident as the February indictment. The deadly weapon at issue in the felonious assault was Kaeff's hands, which he had allegedly used to attempt to strangle the victim, his wife, on or about January 15, 2004.
 {¶ 3} In April 2004, Kaeff filed a motion to dismiss the count of felonious assault on the ground that one's hands cannot, as a matter of law, be considered a deadly weapon. The trial court granted the motion.
 {¶ 4} The state appeals, raising one assignment of error.
 {¶ 5} "The trial court erred when it dismissed the felonious assault count of the `B' Indictment because a person's hands can constitute a deadly weapon, as defined by R.C. 2923.11(A), depending on how they are used."
 {¶ 6} The state contends that one's hands can satisfy the "deadly weapon" element of felonious assault if the state can show that "the defendant's hands were used in such a way that death was a foreseeable result." The state concedes that one's hands are not a deadly weapon by nature, but it contends that whether a defendant's hands were used as a deadly weapon in a particular set of circumstances is a question of fact that should be addressed at trial. Kaeff responds that deadly weapons, as defined in R.C. 2923.11(A), are inanimate objects and that his hands, therefore, "simply cannot be used as a deadly weapon."
 {¶ 7} In defining felonious assault, R.C. 2903.11(A)(2) states that "no person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." R.C. 2923.11(A) defines a deadly weapon as "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." The state argues that hands fit within the definition of an "instrument," are capable of inflicting death, and can be used as a weapon.
 {¶ 8} The trial court concluded that an object must be inanimate to come within the definition of an "instrument, device, or thing" and that "`hands' alone cannot be considered a `deadly weapon.'" The court further concluded that, even if one's hands could be considered an instrument, device, or thing, they would fail to satisfy the definition of a deadly weapon because they are not designed or specifically adapted for use as a weapon. The trial court dismissed the felonious assault count on this basis.
 {¶ 9} The parties seem to agree that hands are not a "device" or "thing," so we begin with the parties' dispute over whether hands can be classified as an "instrument." The state relies on the Merriam-Webster's Online Dictionary, which defines an instrument as "a means whereby something is achieved, performed, or furthered," and it concludes that hands used to strangle another person come within this definition of an instrument. Kaeff, on the other hand, asserts that words listed together in a statute must be presumed to be of the same general kind or class and that, because the words "device" and "thing" refer to inanimate objects, the word "instrument" must also be construed to refer to an inanimate object.
 {¶ 10} Kaeff's argument relies in part on the rule of noscitur a sociis, which has not been incorporated into the statutory rules of construction set forth in R.C. Chapter 1, but has been recognized in case law. See, e.g., Ashland Chem. Co. v.Jones, 92 Ohio St.3d 234, 236-237, 2001-Ohio-184,749 N.E.2d 744; Bank One Trust Co., NA v. Miami Valley Hosp., Montgomery App. No. 19703, 2003-Ohio-4590. Noscitur a sociis means "it is known from its associates." Ashland Chem.,92 Ohio St.3d at 236-237. Under this doctrine, where the meaning of a word is unclear, a court will look at the surrounding words to ascertain the doubtful word's meaning. Id. Kaeff contends that the word "instrument" in R.C. 2923.11(A) must refer to an inanimate object because "device" and "thing" refer to inanimate objects. We agree with Kaeff that the application of the doctrine on noscitur a sociis is helpful to our analysis, but we do not entirely agree with his conclusion. As the state points out in its reply brief, there are cases in which animate objects, such as dogs who are trained to attack on command, have been held to be deadly weapons. See State v. Kemp (Oct. 31, 1997), Hamilton App. No. C-960478; State v. Chlebowski (May 28, 1992), Cuyahoga App. No. 60808. Theoretically, we can imagine other scenarios in which wild animals, snakes, and the like could be used a deadly weapons. As such, we will frame the analysis in terms of whether a part of one's own body can satisfy the definition of a deadly weapon, and not in terms of animate and inanimate objects.
 {¶ 11} The state argues that hands are an "instrument" because they are "a means whereby something is achieved, performed, or furthered." However, for purposes of statutory interpretation, we must give the undefined words of the statute their common and ordinary meaning. R.C. 1.42; Kimble v. Kimble,97 Ohio St.3d 424, 2002-Ohio-6667, 780 N.E.2d 273, ¶ 6. In our view, none of the operative words — instrument, device, or thing — is commonly or ordinarily used to refer to a part of the body. Moreover, as discussed supra, the doctrine of noscitur a sociis suggests that, where the meaning of a word is unclear, a court will look at the surrounding words to ascertain the doubtful word's meaning. Applying this doctrine, we would conclude that the term "instrument," as used in this context, does not include parts of the human body because the words "device" and "thing" do not seem to encompass parts of the body.
 {¶ 12} We also note the important principle of statutory construction that, when a court interprets a criminal statute, the language should be strictly construed against the state and liberally construed in favor of the accused. R.C. 2901.04(A);State v. Hill (1994), 70 Ohio St.3d 25, 31, 1994-Ohio-12,635 N.E.2d 1248. In our view, one's hands come within the definition of an "instrument" only under an expansive interpretation of that definition. Because we are required to construe R.C.2903.11(A)(2) and R.C. 2923.11(A) against the state, it would be inappropriate for us to interpret the term in this manner.
 {¶ 13} The state relies on State v. Schaffer (1960),113 Ohio App. 125, 177 N.E.2d 534, and its progeny in support of its argument that human hands can be considered an "instrument" when used to strangle another person. However, Schaffer predated the statutory definition of a deadly weapon, and it involved a murder rather than a felonious assault. Thus, Schaffer did not discuss "instrument" or "deadly weapon" as those terms are used in R.C.2903.11(A)(2) and R.C. 2923.11(A). Rather, it discussed, more generally, the means by which the victim in that case was killed and whether the defendant could have intended that result. Specifically, the court discussed whether a jury could find, where the victim was killed by manual strangulation, that the killing was purposeful, and done with malice, deliberation, and premeditation. The court determined that such a finding was appropriate. Id. at 130. The appellate court reasoned:
 {¶ 14} "[A] jury is not precluded from finding that malice and an intent to kill existed, when it appears that a young man in his early twenties ferociously attacked an elderly woman in her middle seventies and strangled her to death with his hands by using force of sufficient intensity to break the hyoid bone in two places, and to lacerate and mangle the throat and areas near thereto, culminating in hemorrhage of large volume. * * * Under such circumstances, the hands may be found to be the equivalent of a deadly weapon, and to constitute instruments likely to produce death when viciously employed to strangle."
 {¶ 15} Id. at 130-131. The court concluded that there had been sufficient evidence to establish that the defendant had killed the victim unlawfully, purposely, and with deliberate and premeditated malice.
 {¶ 16} Although the case involved the use of hands as a weapon, in our view, the holding in Schaffer simply does not support the conclusion that one's hands come within the subsequently codified definition of a deadly weapon. Rather,Schaffer stands for the proposition that purposeful killing may be inferred from the fact of manual strangulation. Schaffer
even acknowledged that hands are not deadly weapons "as that term is used in the ordinary sense." Id. at 130. Moreover, when confronted with the use of an item that is not a deadly weapon per se, this court has previously discussed the terms "deadly weapon" and "instrument" in terms that would exclude one's hands. In State v. Ford (Jan. 18, 1995), Montgomery App. No. 14389, we adopted the following analysis of this issue:
 {¶ 17} "[A] `deadly weapon' is anything capable of inflicting death or used as a weapon, and it has been further judicially defined as `an instrument, no matter how innocuous when not in use, . . . if it is of sufficient size and weight to inflict death upon a person, when the instrument is wielded against the body of the victim or threatened to be so wielded . . . [and] as an instrument of sufficient size and weight and of such shape and design that it may be grasped in the hands in such a way that it may be used upon or directed against the body of another in a manner and with sufficient force to kill the other person."
 {¶ 18} Id. citing State v. Deboe (1977),62 Ohio App.2d 192,193-194, 406 N.E.2d 536. This definition obviously suggests the use of an object apart from one's own body, and it supports our conclusion that one's hands are not within the scope of the statutory definition.
 {¶ 19} We recognize that some courts have cited Schaffer,
subsequent to the enactment of the statutory definition, in concluding that fists can be used as deadly weapons. Some of these cases, such as State v. Griffith (Oct. 14, 1996), Butler App. No. CA95-10-167, do not recognize the fact that the statutory definition of "deadly weapon" was not in existence at the time of the Schaffer decision and do not attempt to analyze the issue within the statutory framework. Other cases discuss the term "deadly weapon" in the more vernacular sense, also without specific reference to R.C. 2923.11(A). For example, in State v.Grubach (Dec. 9, 1999), Cuyahoga App. No. 75022, the use of a "deadly weapon" was discussed in the context of a claim of self-defense, with the key issue being whether excessive force was used. The felonious assault at issue in that case was premised on a different prong of the statute, R.C. 2903.11(A)(1), which states that one shall not cause serious physical harm to another. In summary, the state has not pointed us to, and we are unaware of, any cases that squarely address the statutory definition of a deadly weapon in relation to the use of one's hands or that discuss Schaffer in light of the subsequently enacted statutory definition of a deadly weapon. Our own analysis of the definition compels us to conclude that hands are not deadly weapons.
 {¶ 20} Kaeff also suggests that we apply the doctrine of ejusdem generis in interpreting the definition of a deadly weapon. Pursuant to this doctrine, in a statute, where general words follow a designation of particular subjects or classes of persons, the meaning of the general words will ordinarily be construed as restricted by the particular designation and as including only things or persons of the same class or nature as those specifically enumerated, unless there is a clear manifestation of a contrary purpose. See State v. Clark (1938),60 Ohio App. 367, 371-372, 21 N.E.2d 484; Black's Law Dictionary (6 Ed.Rev. 1990) 517. However, because the word "instrument" is no more general than the words "device" and "thing," we find that the doctrine of ejusdem generis is inapplicable.
 {¶ 21} The state also addresses the second part of the definition of a deadly weapon, i.e., that it must be "designed or specifically adapted for use as a weapon, or possessed, carried, or used as a weapon." R.C. 2923.11(A). The state contends that Kaeff's hands were "used as a weapon" and that the trial court erred in concluding that his hands could not be deadly weapons because they were not designed or specifically adapted for use as weapons. It appears that the trial court did err in considering only whether one's hands are specifically adapted for use as a weapon, and not whether they were possessed, carried, or used as a weapon. However, the error is irrelevant in light of our previous discussion and the conjunctive structure of the statutory definition. Pursuant to R.C. 2923.11(A), if one's hand are not an "instrument, device, or thing," they cannot be a deadly weapon, and there is no reason to consider whether they were specially adapted, possessed, carried, or used as a weapon. Thus, the court's failure to consider whether Kaeff's hands had been used as a weapon was harmless.
 {¶ 22} The assignment of error is overruled.
 {¶ 23} The judgment of the trial court will be affirmed.
Fain, P.J. and Grady, J., concur.