[Cite as *State v. Deibel*, 2011-Ohio-3520.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                  CASE NO. 1-10-70

    v.

JASON DEIBEL,                          O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Allen County Common Pleas Court
Trial Court No. CR2009 0401

**Judgment Affirmed**

Date of Decision: July 18, 2011

APPEARANCES:

    *F. Stephen Chamberlain* for Appellant

    *Alissa M. Sterling* for Appellee

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant Jason Deibel ("Deibel") brings this appeal from the judgment of the Court of Common Pleas of Allen County finding him guilty of having a weapon while under a disability, possession of methamphetamine, and the illegal manufacturing of methamphetamine within the vicinity of a school. The trial court also ordered that the real estate where the methamphetamine was manufactured be forfeited. For the reasons set forth below, the judgment is affirmed.

{¶2} On December 17, 2009, the Allen County Grand Jury indicted Deibel on the following counts: (1) having a weapon while under a disability in violation of R.C. 2923.13(A)(3), a third degree felony; (2) possession of methamphetamine in excess of the bulk amount but not exceeding five times the bulk amount in violation of R.C. 2925.11(A), (C)(1)(b), a third degree felony; (3) illegal assembly/possession of chemicals for the manufacture of methamphetamine in violation of R.C. 2925.11(A), (C), a third degree felony; (4) the illegal manufacture of methamphetamine within the vicinity of a school in violation of R.C. 2925.04(A), (C)(3)(b), a first degree felony with a forfeiture specification of electronic equipment and real estate; and (5) engaging in a pattern of corrupt activity in violation of R.C. 2923.32(A)(1), (B)(1), a felony of the first degree. Deibel entered pleas of not guilty to all charges on December 22, 2009. On

August 10, 2010, Deibel entered a negotiated plea agreement in which he pled guilty to counts one, two, and three. The remaining counts were dismissed. On September 24, 2010, a sentencing hearing and forfeiture hearing were conducted. The trial court sentenced Deibel to a total prison term of twelve years. The trial court also ordered that the electronic equipment and real estate be forfeited to the State of Ohio. Deibel appeals from this judgment and raises the following assignments of error.

### First Assignment of Error

**The trial court committed error prejudicial to [Deibel] by not making the required findings that the real property ordered forfeited was contraband, proceeds of the offense or an instrumentality of the offense.**

### Second Assignment of Error

**The trial court committed error prejudicial to [Deibel] in its ruling that upon a proportionality review, the real property should be forfeited to the State of Ohio.**

### Third Assignment of Error

**The trial court committed error in forfeiting [Deibel's] real property in violation of the Eighth Amendment of the United States Constitution and Article I, Section 9 of the Ohio Constitution.**

### Fourth Assignment of Error

**[Deibel] was denied effective assistance of counsel to such an extent that the outcome of the case and guilty plea was entered into in a prejudicial manner.**

**Fifth Assignment of Error**

**[Deibel's] plea was not made knowingly, voluntary or intelligently all to the prejudiced (sic) of [Deibel].**

The assignments of error will be addressed out of order.

**{¶3}** In the fourth and fifth assignments of error, Deibel alleges that his plea was not knowingly, voluntarily, or intelligently made. He also claims that his trial counsel was ineffective for allowing him to enter the plea. This argument is based upon Deibel's claim that all of the questions asked by the trial court suggested affirmative answers.

> **Before accepting a guilty plea, Ohio Crim.R. 11 requires the trial court to personally address a defendant to determine if the plea is voluntary, and that the defendant understands both the plea itself as well as the rights waived by pleading guilty. Crim.R. 11(C)(2). * * ***
>
> **\* \* \***
>
> **With regard to the constitutional rights enumerated in Crim.R. 11, "a guilty plea is constitutionally infirm when the defendant is not informed in a reasonable manner at the time of entering his guilty plea of his rights to a trial by jury and to confront his accusers, and his privilege against self-incrimination, and his right of compulsory process for obtaining witnesses in his behalf." [*State v. Ballard*, 66 Ohio St.2d473, 478, 423 N.E.2d 115]. This rule does not extend to require a court to use the exact language of Crim.R. 11, but the court must advise the defendant of each right waived by the guilty plea. [Id. at 480].**
>
> **With regard to the non-constitutional requirements of Crim.R. 11, this Court looks at whether the trial court substantially**

> **complied with the requirements of Crim.R. 11 and will not reverse unless prejudice occurred, if substantial compliance exists.** *State v. Stewart* **(1977), 51 Ohio St.2d 86, 93, 364 N.E.2d 1163. "Substantial compliance means that under the totality of the circumstances that the defendant subjectively understands the implications of his plea and the rights he is waiving.** *State v. Nero* **(1990), 56 Ohio St.3d 106, 108, 564 N.E.2d 474 citing** *State v. Carter* **(1979), 60 Ohio St.2d 34, 396 N.E.2d 757.**

*State v. Moore*, 3d Dist. Nos. 6-07-03, 6-07-04, 2007-Ohio-6018, ¶9-12.

{¶4} Deibel does not point to any failure by the trial court to discuss a constitutional right with him. Instead, he claims that the trial court did not substantially comply with Crim.R. 11. A review of the record indicates that the trial court spoke directly to Deibel and informed him of all the constitutional rights set forth in Crim.R. 11. After each element was discussed, the trial court asked Deibel if he understood. He indicated that he did. The trial court fully informed the defendant of the potential consequences of the plea agreement including post release control and the possible forfeiture of property to the State. Before accepting the guilty plea, the trial court asked Deibel if he had any questions. Deibel indicated that he did not. The State then set forth the underlying facts forming the basis for the charges. Only then did the trial court accept the guilty plea. Thus, the trial court substantially complied with Crim.R. 11. The fifth assignment of error is overruled.

{¶5} The fourth assignment of error alleges that Deibel was denied effective assistance of counsel because his plea was not voluntarily made. "Reversal of convictions on ineffective assistance requires the defendant to show 'first that counsel's performance was deficient and, second that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial.'" *State v. Cassano,* 96 Ohio St.3d 94, 2002-Ohio-3751, ¶ 105, 772 N.E.2d 81. The defendant must show that there was a reasonable probability that but for counsel's error, the result of the trial would have been different. Id. at ¶ 108. *State v. Baughman*, 3d Dist. No. 1-10-34, 2010-Ohio-4951. Having already determined that the plea was voluntarily entered, trial counsel was not ineffective. The fourth assignment of error is overruled.

{¶6} Deibel alleges in the first assignment of error that the trial court erred in granting forfeiture of the real property to the State.[1]

> **(A)  The following property is subject to forfeiture to the state or a political subdivision under either the criminal or delinquency process in [R.C. 2981.04 or R.C. 2984.05]:**
>
> * * *
>
> **(2) Proceeds derived from or acquired through the commission of an offense;**
>
> **(3)  An instrumentality that is used in or intended to be used in the commission or facilitation of any of the following offenses when the use**

---

[1]   Deibel is apparently not challenging the forfeiture of the electronic equipment.

**or intended use, consistent with division (B) of this section, is sufficient to warrant forfeiture under this chapter:**

**(a)  a felony**

**\* \* \***

**(B)  In determining whether an alleged instrumentality was used in or was intended to be used in the commission or facilitation of an offense \* \* \* in a manner sufficient to warrant its forfeiture, the trier of fact shall consider the following factors the trial of fact determines are relevant:**

**(1)  Whether the offense could not have been committed or attempted but for the presence of the instrumentality;**

**(2)  Whether the primary purpose in using the instrumentality was to commit or attempt to commit the offense;**

**(3)  The extent to which the instrumentality furthered the commission of, or attempt to commit, the offense.**

R.C. 2981.02.  However, plea agreements which specify the relinquishment of property as one of the terms are a waiver of the statutory requirement that the trial court conduct the above analysis.  *State v. Dickens*, 4th Dist. No. 05CA14, 2006-Ohio-4920, ¶11.  By entering a guilty plea, one is admitting to all of the allegations set forth in the indictment to which the plea is entered.  Crim.R. 11(B)(1).  Here, Deibel specifically entered a guilty plea to the forfeiture specification that the real estate was an instrumentality of the offense of producing methamphetamine in the vicinity of a school.  Since he has admitted the fact, he has waived the right to challenge on appeal the accuracy of the trial court's finding

that the real estate was an instrumentality of the offense. The first assignment of error is overruled.

{¶7} In the second and third assignments of error, Deibel claims that the trial court erred in determining that the forfeiture of the home was proportional to the offense. This failure allegedly violates the Eighth Amendment of the U.S. Constitution. The Eighth Amendment of the U.S. Constitution prohibits the government from imposing an excessive fine upon an individual. The Supreme Court of Ohio has determined that forfeiture of property as a form of punishment for a specified offense is a fine for purposes of the Eighth Amendment. *State v. Hill* (1994), 70 Ohio St.3d 25, 635 N.E.2d 1248. Before entering an order of forfeiture, a trial court must first independently determine whether the forfeiture is an excessive fine which is prohibited. Id.

> **Several federal circuits have adopted the proportionality test to determine the excessiveness of a fine. * * * The proportionality test derives from the United States Supreme Court's ruling in *Solem v. Helm* (1983), 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637. In *Solem*, the court held that a proportionality review of a criminal sentence pursuant to the Cruel and Unusual Punishment Clause should be guided by objective criteria including the gravity of the offense and the harshness of the penalty, the sentences imposed on other criminals in the same jurisdiction, and sentences imposed for the commission of the same crime in other jurisdictions. Id. at 291-292. * * ***

> **Although *Solem* involved the Cruel and Unusual Punishment Clause, the federal circuits have applied the same analytical framework to the Excessive Fines Clause. According to the**

> **Sixth Circuit, the core of the proportionality review compares the value of the property to a variety of factors. These factors include the culpability of the defendant, the gravity of the offense, the relationship of the property to the offense and the harm to the community. \* \* \* No one factor has greater value than any other. The trial court is to examine all the factors as they apply to the specific case before it. By conducting its analysis in this way, the trial court ultimately must determine whether the appropriate test as applied to the totality of the circumstances renders the forfeiture an excessive fine.**

*State v. Harold* (1996), 109 Ohio App.3d 87, 92, 671 N.E.2d 1078. This standard

of review was codified in 2007.

> **(A) Property may not be forfeited as an instrumentality under this chapter to the extent that the amount or value of the property is disproportionate to the severity of the offense. The owner of the property shall have the burden of going forward with the evidence and the burden to prove by a preponderance of the evidence that the amount or value of the property subject to forfeiture is disproportionate to the severity of the offense.**

> **\* \* \***

> **(C) In determining the severity of the offense for purposes of forfeiture of an instrumentality, the court shall consider all relevant factors including, but not limited to, the following:**

> **(1) The seriousness of the offense and its impact on the community, including the duration of the activity and the harm caused or intended by the person whose property is subject to forfeiture;**

> **(2) The extent to which the person whose property is subject to forfeiture participated in the offense;**

> **(3) Whether the offense was completed or attempted.**

R.C. 2981.10. Unlike the error alleged in the first assignment of error, Deibel specifically retained the right to challenge the proportionality of the forfeiture.

{¶8} The parties stipulated that the home was worth $61,800.00. At the time of his arrest, Deibel owed around $39,000 to the bank for the mortgage. Thus, the total equity in the home is approximately $23,000.00. Special Agent Gary Miller ("Miller") from the Bureau of Criminal Identification and Investigation testified as follows concerning the search of the home.

**Q: And what, if anything, did you find at that residence?**

**A: An operational meth lab, basically chemical glassware, everything from condensing columns through round bottom flasks to heating nails to solvents, acids, basis, blister packs. There was an autoclave, stirring – basically it's – I don't know what it's called. It's basically a – it stirs just by vibration.**

**Q: Okay.**

**A: In the house there was methamphetamine, pipes, .45 caliber handgun, blister packs. On the computer just volumes, I mean volumes and volumes, tens of thousands of pages of whether it's methamphetamine, manufacturing methamphetamine, other drugs, secrets to methamphetamine by Uncle Fester, Disguise – I was trying to remember all the stuff that's on there. Just tens of thousands of pages.**

**Q: Well, let me ask you this. You, fair to say that you found all of the necessary ingredients to make methamphetamine?**

**A: I found methamphetamine base. I found methamphetamine hydrochloride there. I found, well, methamphetamine base in a fluid solvent or a fluid in a round bottom flask. I found all the**

ingredients that I – to make meth that I needed.  Basically to make meth that were needed there (sic).

Q:  Okay.

A:  In parts and pieces.

Q:  Okay.  And you found finished product methamphetamine; correct?

A:  Yes.  Ba—methamphetamine base.

Q:  Okay.  And you found, correct me if I'm wrong, but surveillance cameras there, correct?

A:  Yeah, there was a surveillance – covert surveillance camera light bulb.  That's what I remember.

Q:  You found items all termed drug paraphernalia, specifically I believe you mentioned a pipe.  There were also digital scales, were there not?

A:  Scales, yes.

Q:  Okay.  There were also – you referenced the information on the computer.  The computer was located inside the residence; correct?

A:  There were a laptop and at least one (1) desktop style.

Q:  There were also items related to step-by step instructions on how to make methamphetamine actually contained out in the garage where the lab itself was located; is that correct?

A:  There were – there were documents on chemical glassware, chemicals themselves.  I remember a handwritten formula or recipe, for lack of a better term, that might have been in the house.  Documentation in a file folder out in the garage for anhydrous ammonia and (inaudible) and various other things.

**Some chemical software or chemical data sheets, I think there were.**

**Q:  Okay.  You're talking acids and bases and flasks and heat sources and all kinds of stuff that –**

**A:  Yes.**

**Q:  That makes me think that meth labs could potentially be dangerous; is that accurate?**

**A:  Meth labs are very dangerous.  They're – every – almost every step deals with a solvent or tough flammable based material.**

**In one process you need an additional heat source.  In the other process the reaction is so violent and so dramatic that it (inaudible) the methamphetamine over that way.**

**Methamphetamine is one of those things that everything – everything we need to make it we can buy and purchase.  And we're all familiar with it and very comfortable with it.  But as soon as you start mixing certain things together the chemical itself morphs.  It changes.   And what it becomes, it becomes unstable sometimes.**

**I've seen explosions, fires, toxic vapors that have killed people.  Both processes have toxic vapors.  Of course you got neuro – neuro solvent.   The solvents are neuro reactors.   The acids themselves put off vapors.  I mean there's many different things.**

**Q:  Correct me if I'm wrong but this particular residence at 860 S. Nixon was directly across the street from a daycare here in our community; is that correct?**

**A:  It was across from a daycare and within – well, the garage set within twenty (20) feet of the bureau of motor vehicles.**

Sept. 24, 2010 Hearing, 21-25. Miller's testimony showed that the house was used to store the ingredients for making the methamphetamine and also was used to process the chemicals into methamphetamine. Miller also testified to the potential dangers to the community that arose from having a methamphetamine lab in a residential neighborhood. Miller also testified that Deibel was using the anhydrous ammonia method of producing methamphetamine. Id. at 33. From the 450 grams of pseudoephedrine found in the home, Deibel would be able to produce approximately thirteen ounces of methamphetamine, which would have a value of approximately $52,000.00. Id. at 34.

{¶9} After hearing the testimony, the trial court made the following findings.

> **[T]his involves the illegal act of manufacturing methamphetamine over an extended period in said residence; that said duration was lengthy as indicated; that there was an operational lab within the residence; there had been controlled purchases of methamphetamine out of the residence; that there were large purchases of pseudoephedrine by the defendant or other co-defendants for the purposes and use in the manu—of the aforesaid manufacturing; that the distribution of methamphetamine is an illegal act and that the distribution of the same in the community does cause serious harm to the community and that the said residence was used in said operation for an extended period of time.**
>
> **\* \* \***

> **The court finds that the defendant in this particular instance owns the residence in question along with his wife who lives in the property. I don't – is the deed in his name alone?**
>
> **Ms. Sterling: It is in his name alone.**
>
> **The Court: But she has a dower interest.**
>
> **Ms. Sterling: Which she forfeited at her plea hearing, Judge.**
>
> **The Court: Okay. Both – that they participated in the activities as set forth above. That the defendant was the head of the operation based upon the testimony of Mr. Miller. And that this property was the prime instrumentality of the illegal activity in this instance.**
>
> **\* \* \***
>
> **The court finds that the operation and manufacture process of "meth" was completed and had been ongoing for at least 4-5 months, along with defendant's prior conviction in this instance establishes a pattern of engaging in corrupt activity.**
>
> **The court further finds and has considered the value of the property that is the instrumentality in the assistance, operation and manufacturing of "meth" to be sixty-one eight and that the value of the property to the defendant was sixty-one eight and a mortgage of thirty-eight eight with a net equity of twenty-three thousand dollars ($23,000.00).**
>
> **The court further finds that the value of the illegal operation and substances over the 4-5 month period to be far in excess of the value, net value of the residence.**

Id. at 44-46. The trial court clearly considered all of the statutory factors. A review of the record indicates that the trial court's findings were supported by the evidence. Thus, the trial court did not abuse its discretion in finding that the

forfeiture was not disproportionate to the crime. The second and third assignments of error are overruled.

{¶10} Having found no error prejudicial to defendant, the judgment of the Court of Common Pleas of Allen County is affirmed.

*Judgment Affirmed*

**ROGERS, P.J., concurs in Judgment Only**
**SHAW, J., concurs.**

**/jlr**